# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CAROLYN SMITH, ET AL, § <br> *Plaintiffs* § <br> § <br> v. § <br> § <br> THE CITY OF BASTROP, ET AL, § <br> *Defendants* § | Case No. 1:19-CV-1054-RP |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:  THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiffs' Motion for Partial Summary Judgment, filed October 9, 2020 (Dkt. 64); Defendants' Motion to Strike the Declaration and Testimony of Raymond White, filed October 23, 2020 (Dkt. 70); Defendants' Joint Response and Cross-Motion for Summary Judgment, filed October 26, 2020 (Dkt. 71); Plaintiffs' Objections to and Motion to Strike Certain of Defendants' Cross-Motion for Summary Judgment Evidence, filed November 9, 2020 (Dkt. 74); and the associated response and reply briefs.[1]

On November 19, 2020, the District Court referred the Motions and related filings to the undersigned Magistrate Judge for disposition and report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

---

[1] Defendants requested a hearing. Dkt. 71 at 55. Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing, and Defendants' request is **DENIED**.

1

## I.    Background

Plaintiffs contend that the City of Bastrop levied illegal assessments against property owners within a public improvement district. On October 28, 2019, Plaintiffs Carolyn Smith, The Village at Hunters Crossing, LLC, and Lirtex Properties, LLC filed suit against the "City Defendants," which are the City of Bastrop, Texas, the City Council members for the City of Bastrop,[2] and the Directors of Hunters Crossing Local Government Corporation;[3] and "Developer Defendants" Forestar (USA) Real Estate Group, Inc.[4] and its successor-in-interest, TF Hunters Crossing, L.P.

On September 11, 2001, the City of Bastrop passed a resolution creating the Hunters Crossing Public Improvement District ("PID"), pursuant to the Texas Public Improvement District Assessment Act, TEX. LOC. GOV'T CODE §§ 372.001-372.030 ("PIDA Act"). Dkt. 64-4. According to a Service and Assessment Plan ("SAP") adopted by a 2003 Ordinance, the PID levies assessments based on the assumed value of the property benefited by construction of the proposed public improvement, subject to adjustments for benefits received, as authorized by TEX. LOC. GOV'T CODE § 372.015. Dkts. 64-5, 64-6. In 2004, the City passed an ordinance amending the 2003 SAP due to "scrivener's and mathematical errors." Dkt. 64-7 at 2. Defendants assert that the City later adopted other ordinances, resolutions, and budgets affecting the PID. Dkt. 71 at 43 n.153. Plaintiffs dispute that Defendants amended the PID assessments or allocations between 2004 and 2019. Dkt. 64 at 8.

---

[2] Connie Schroeder, Willie Lewis "Bill" Peterson, Drusilla Rogers, Lyle Nelson, Bill Ennis, and Dock Jackson, each in his or her official capacity as a member of the City Council of the City of Bastrop.

[3] Lynda Humble (replaced by Trey Job, Dkt. 71 at 1), Drusilla Rogers, Rick Womble, Michelle Dodson, Lyle Nelson, and Tabitha Pucek, each in his or her official capacity as a Director of Hunters Crossing Local Government Corporation.

[4] On September 2, 2020, the District Court granted a motion to dismiss filed by Defendant Forestar (USA) Real Estate Group, Inc. ("Forestar"). Dkt. 54. The Court then entered partial final judgment under FED. R. CIV. P. 54(b), severing and resolving all claims against Forestar. Dkt. 79. TFHC is the remaining Developer Defendant.

2

On September 24, 2019, the City adopted Resolution No. R-2019-86 and Ordinance No. 2019-40 (the "2019 Ordinance"), which allocated $14,151,436 in costs to the Developer Defendants as of 2020. Dkt. 64-16 at 21. The City also ratified an agreement between the City Defendants and the Developer Defendants in which the Developer Defendants would accept a reduced total payment of $11,961,260. *Id.* at 8. Plaintiffs assert that the 2019 Ordinance increased the SAP by nearly $2 million for cost overruns that had accrued in previous years and illegally included capitalized interest in the principal balance. Dkt. 64 at 2. Defendants assert that the 2019 Ordinance did not increase the 2003 assessment, but apportioned it on a parcel-by-parcel basis. Dkt. 71 at 2.

Plaintiffs seek declarations that the 2019 Ordinance is invalid and violates procedural and substantive due process under the United States and Texas Constitutions, and that the City Defendants have acted *ultra vires* in seeking to enforce it. Dkt. 55 at 16-17. Plaintiffs also ask the Court to enter a permanent injunction against enforcement of the 2019 Ordinance. *Id.* at 17-18. Finally, Plaintiffs assert that TF Hunters Crossing, L.P. ("TFHC") engaged in a civil conspiracy with the Bastrop City Council and Directors of the Hunters Crossing Local Government Corporation ("LGC") to cover up the City Defendants' statutory violations, and negligently misrepresented or omitted information related to the PID assessments. *Id.* at 18-20.

Plaintiffs move for partial summary judgment on their substantive and procedural due process claims. Plaintiffs contend that the Court should declare the 2019 Ordinance unconstitutional because Defendants have violated the PIDA without rational basis. Plaintiffs ask the Court to enjoin Defendants from enforcing the ordinance. Dkt. 64. In their response and cross-motion for summary judgment denying all of Plaintiffs' claims, Defendants argue that Plaintiffs have not shown they were constitutionally damaged by the alleged violations of the PIDA and that Defendants acted within their legislative discretion in passing the 2019 Ordinance. Dkt. 71.

## II. Order on Motions to Strike

Both Plaintiffs and Defendants move to strike or exclude certain summary judgment evidence. Plaintiffs seek to strike the affidavits of Tracy Waldron, John Brian, Julie Fort, and Patrick Bourne and two manuals from the Texas Municipal League. Dkt. 74. Defendants move to strike the declaration and testimony of Plaintiffs' trial counsel, Raymond White. Dkt. 70.

At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form, but must be capable of being presented in a form that would be admissible at trial. FED. R. CIV. P. 56(c); *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). Defendants offer information to show the evidence Plaintiffs challenge will be admissible at trial. Dkt. 78 at 3-6. Contrary to Plaintiffs' assertions, neither the Waldron Affidavit nor the Brian Affidavit contains inadmissible legal conclusions; rather, each states opinions based on personal knowledge and the affiant's understanding of the facts. Accordingly, Plaintiffs' arguments regarding the lack of foundation or the admissibility based on hearsay, lack of personal knowledge, and conclusory statements do not establish that the Affidavits of Tracy Waldron and John Brian or the two manuals from the Texas Municipal League should be stricken. *See Lee*, 859 F.3d at 355.

Plaintiffs also ask the Court to prevent Defendants from arguing that the City had a rational basis for its actions, contending that, when asked in an interrogatory why the City's action met the rational basis test, Defendants failed to provide any reason or theory. Dkt. 74 at 4-5. The rational basis determination is a question of law that is before the Court, so argument on this topic is appropriate. *See FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 172 (5th Cir. 1996). The Court's January 15, 2021 Order addressed Plaintiffs' objections to the affidavits and testimony of Julie Y. Fort and Patrick R. Bourne. Accordingly, Plaintiffs' Motion to Strike is hereby **DENIED**.

Defendants move to strike paragraph 4 from a declaration of Plaintiffs' counsel, Raymond White, authenticating discovery requests and responses Plaintiffs submitted in support of their Motion for Partial Summary Judgment. Dkt. 64-1. Defendants object that this paragraph contains White's opinions as to whether activities described in Defendants' discovery responses are adequate under the PIDA Act. Dkt. 70 at 1; Dkt. 64-1 ¶ 4. Plaintiffs designated White as an expert witness only as to reasonable and necessary attorneys' fees. Dkt. 49 at 3. Even had White been properly designated as an expert on the PIDA Act, he would be prohibited from offering legal conclusions. *Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 240 (5th Cir. 1983) (holding that expert witness may not opine on legal conclusions that should be drawn from the evidence, which "both invades the court's province and is irrelevant"). Accordingly, Defendants' Motion to Strike paragraph 4 of the White Declaration (Dkt. 64-1) is hereby **GRANTED**.

### III. Summary Judgment Motions

Plaintiffs move for judgment as a matter of law that the 2019 Ordinance violated their substantive and procedural due process rights under the Fourteenth Amendment and therefore is unconstitutional. Defendants cross-move for summary judgment, asking the Court to find that Plaintiffs have suffered no constitutional injury to any property interest under the PIDA Act, which they contend resolves all of Plaintiffs' claims.

### A. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

5

U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

On cross-motions for summary judgment, the Court reviews each party's motion independently, in the light most favorable to the non-moving party, to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

### B. Substantive Due Process

A government violates substantive due process when it deprives an individual of constitutional rights by an arbitrary use of its power. *Simi Inv. Co. v. Harris Cnty.,* 236 F.3d 240, 249 (5th Cir. 2000). To be entitled to summary judgment on their substantive due process claim, Plaintiffs first must show there is no genuine issue of material fact that Defendants deprived them of a protected property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Once that showing is made, the Court must consider whether the government action was supported by a rational basis, or whether it was arbitrary or capricious. *Brennan v. Stewart*, 834 F.2d 1248, 1256-57 (5th Cir. 1988). "[G]overnment action comports with substantive due process if the action is rationally related to a legitimate governmental interest." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). A rational basis determination is a question of law. *Id.* at 172 n.6.

#### 1. Property Interests

Plaintiffs' property interests arise from the PIDA Act. TEX. LOC. GOV'T CODE §§ 372.001-372.030. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir. 1998) ("In order to assert a violation of [the Fourteenth] [A]mendment, one must at least demonstrate the deprivation of a protected property interest established through some independent source such as state law."). The PIDA Act grants governing bodies discretion in adjusting assessments, but places significant restrictions on that discretion by mandating the process required for adjustment, thus creating a property interest for individuals within the PID. TEX. LOCAL GOV'T CODE §§ 372.013, 372.014, 372.015, 372.017, 372.018; *see also Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir. 2008) ("To determine whether statutes or regulations create a protected property interest, we must ask whether they place 'substantive limitations on official discretion.'") (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

7

Plaintiffs seek a declaration that the 2019 Ordinance is unconstitutional because it deprived them of four specific property interests under the PIDA in the form of the following asserted rights:

1. notice and process to avoid cost overruns that increased the assessment amounts by nearly $2 million and extended the lifetime of the liens on their properties from 25 to 39 years;
2. credit for their previous payments of assessments under the revised plan;
3. to avoid illegal capitalization of interest into the principal of their purported obligations on the prior fifteen years of improvement work, which was assessed neither annually nor properly; and
4. to make payments against the interest and assessments.

Dkt. 64 at 2. The Court addresses each of these four asserted property rights in turn.

### a. Adjustment of Assessment Amount

The PIDA Act states that the service plan must be reviewed and updated annually "for the purpose of determining the annual budget for improvements." TEX. LOCAL GOVT. CODE § 372.013(b). An assessment plan must be included in the annual update of the service plan. *Id*. § 372.014(a). "The amount of assessment for each property owner may be adjusted following the annual review of the service plan." *Id.* § 372.015(d).

Plaintiffs allege that Defendants failed to hold annual meetings to make updates to the assessment, a process required under the PIDA Act. Dkt. 64 at 2. Defendants contend that the annual meeting requirements were met through the activities of the LGC and the City. Dkt. 71 at 18-26. The City created the LGC in 2004 to implement the SAP. *Id.* at 19. Defendants assert that the LGC considered and updated annual budgets for the PID on behalf of the City from 2012 through 2016, as reflected in LGC agendas and meeting minutes. *Id*.; Dkt. 71-12. Defendants also claim that Plaintiffs were aware of the LGC's activities because the managing officer of Plaintiff

Lirtex Properties and the trustee of Plaintiff Smith Family Living Trust served on the LGC board of directors and participated in the adoption of annual budgets. Dkt. 71 at 19. Defendants further contend that the City performed annual reviews and adopted ordinances approving the SAP in 2017, 2018, and 2019. Dkt. 71 at 43 n.153. Plaintiffs argue that only the City may conduct the annual review and approve adjustments to the assessment, so the activities of the LGC cannot satisfy the PIDA Act's annual meeting requirement. Dkt. 75 at 23.

Even assuming that Defendants failed to hold any annual meetings between 2004 and 2019 to make updates and necessary adjustments to the assessment, there is a factual dispute as to whether the 2019 Ordinance adjusted the 2004 assessment, precluding summary judgment. Plaintiffs allege that the 2019 Ordinance increased the assessment by nearly $2 million for cost overruns that had accrued in previous years. Dkt. 64 at 2; Dkt. 75 at 20-22. Plaintiffs' financial expert, Christopher Anderson, opined that the 2019 Ordinance increased the capital assessment totals per property under the 2003 SAP. Dkt. 64-3 at 34-35.

Defendants assert that Plaintiffs rely on flawed data to claim that the 2003 Ordinance levied a capital assessment of $7.5 million; they argue that the capital assessment was $11.962 million, the amount in the 2019 Ordinance. Dkt. 71 at 44. Defendants' financial expert, Patrick Bourne, opined that the 2019 SAP actually reduced the PID property owners' obligation. Dkt. 71-30 at 18.

Thus, there is conflicting evidence regarding the net effect of the 2019 Ordinance. Because there are genuine issues of material fact as to whether and how the assessment was adjusted, the Court recommends that the parties' cross-motions for summary judgment be denied as to the constitutionality of the 2019 Ordinance.

### b. Credit for Previous Payments

Plaintiffs contend that, in increasing the overall assessment, the 2019 Ordinance failed to provide credits for previous payments made by individual property owners. Dkt. 64 at 2; Dkt. 75 at 36-37. Defendants assert that the City has tracked prior assessment payments and assigned those payments to the appropriate parcel as credits. Dkt. 71 at 36. Defendants submit an affidavit from Tracy Waldron, the Chief Financial Officer for the City of Bastrop and Staff Liaison to the LGC, who states that credits for past assessment payments are reflected in the 2019 SAP Assessment Roll. Dkt. 71-29 ¶¶ 8-9. In response, Plaintiffs provide an affidavit from their financial expert, Anderson, stating that his analysis of the records shows no individual credit was given for past payments. Dkt. 75-4 ¶¶ 14-19. The undersigned finds that the parties have introduced conflicting evidence regarding whether credits for past payments were given under the 2019 Ordinance.

### c. Interest

Section 372.017(b) of the PIDA Act states that a governing body "may provide that assessments be paid in periodic installments, at an interest rate and for a period approved by the governing body." TEX. LOCAL GOVT. CODE § 372.017(b). The Act further states that:

> An assessment bears interest at the rate specified by the governing body of the municipality or county beginning at the time or times or on the occurrence of one or more events specified by the governing body. If general obligation bonds, revenue bonds, time warrants, or temporary notes are issued to finance the improvement for which the assessment is assessed, the interest rate for that assessment may not exceed a rate that is one-half of one percent higher than the actual interest rate paid on the debt. Interest on the assessment between the effective date of the ordinance or order levying the assessment and the date the first installment is payable shall be added to the first installment. . . .

*Id.* § 372.018(a). Plaintiffs allege that Defendants violated the PIDA Act as to interest in two different ways: by including interest in the principal assessment and exceeding the statutory limit.

10

### i. Exclusion from the Assessment

Plaintiffs assert that the 2019 Ordinance includes capitalized interest in the principal assessment in violation of the PIDA Act, which provides that only "costs" may be included. Dkt. 64 at 16. Defendants argue that interest is a "cost" under the Act that was properly included in the principal assessment in both 2003 and 2019. Dkt. 71 at 47-49. Defendants also contend that the 2019 Ordinance did not impose capitalized interest as a cost on Plaintiffs because, by 2019, the actual capital costs exceeded the $11.962 million lump sum that was levied in 2003. Dkt. 71 at 27; Dkt. 77 at 3, 5. Defendants assert that the cost overruns, including capitalized interest, were absorbed by the developer, TFHC, under its agreement with the City. Dkt. 64-16 at 20-21; Dkt. 71-15 at 4; Dkt. 71-27 ¶¶ 7-10.

The PIDA Act contains no provision prohibiting municipal governments from including interest in an assessment. TEX. LOCAL GOVT. CODE Section 372.023(h) provides: "The costs of any improvement include interest payable on a temporary note or time warrant and all costs incurred with the issuance of bonds under Section 372.024 may be included in the assessments against the property in the improvement district as provided by this subchapter." Whether a plaintiff has a protected property interest depends on an independent source of "existing rules or understandings" creating a reasonable expectation in that particular interest. *Roth*, 408 U.S. at 577; *see also Skidmore v. Shamrock Indep. Sch. Dist.*, 464 F.2d 605, 606 (5th Cir. 1972) (stating that a property interest arises where an individual has a "legitimate claim to entitlement" in some right). Here, because municipal governments may include interest in an assessment, Plaintiffs cannot claim a property right in the exclusion of interest from the assessment, and the undersigned recommends that the District Court GRANT summary judgment to Defendants as to this asserted right. *See MW Builders of Texas, Inc., v. City of Wichita Falls*, Civil Action No. 7:08-CV-00192-

O, 2009 WL 2365443, at *5-6 (N.D. Tex. July 31, 2009) (finding that substantive due process claim failed where plaintiff could not show cognizable property right arising under state law).

### ii. Statutory Limit

Plaintiffs also contend that Defendants failed to calculate interest properly in the 2019 Ordinance so as not to exceed the limit set under the Act. Dkt. 64 at 16. Plaintiffs do have a property interest in the statutory limit on interest established under PIDA Act and how interest payments are applied as set forth in Section 372.018(a). TEX. LOCAL GOVT. CODE § 372.018(a); *see also Ridgely*, 512 F.3d at 736 (holding that a statute creates a property interest for individuals when it places substantive limits on the government's official discretion).

Plaintiffs claim that the 2019 Ordinance "essentially capitalizes the interest that might have accrued on the PID assessments under a flat 6% interest rate." Dkt. 64 at 16. Plaintiffs assert that rather than accounting for fluctuating interest rates to ensure that the statutory cap was not exceeded, Defendants improperly averaged a set interest rate over all the properties in the PID. *Id.* Defendants argue that, under the 2019 Reimbursement Agreement with the City, THFC agreed to accept payment that was over $2 million less than its actual incurred costs and waived its right to recoup any previously accrued interest on the principal assessment, so Plaintiffs have no injury arising from allegedly excess interest. Dkt. 71 at 31-32.

Neither party has identified evidence showing whether the interest included in assessments under the 2019 Ordinance exceeds "a rate that is one-half of one percent higher than that actual interest rate paid on the debt," as provided in TEX. LOCAL GOVT. CODE § 372.018(a). *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (noting that Rule 56 does not require the Court to sift through the record in search of evidence to support a party's motion for, or opposition to, summary judgment). Plaintiffs' financial expert, Anderson, opined that the 2019

Ordinance increased interest by $2,008,739. Dkt. 64-3 ¶ 43. Anderson estimated the interest to complete his calculations regarding the 2019 assessment increase. *Id.* ¶ 77; *id.* at 49. Defendants rely on the terms of the 2019 Reimbursement Agreement to argue that the property owners received $2 million in benefits to the PID, including accrued interest as capital costs, for which they did not pay. Dkt. 71 at 32; Dkt. 71-27 ¶ 9; Dkt. 77 at 7. The undersigned finds that there are material facts in dispute regarding the proper calculation of interest on the debt from 2004 to 2019 and the net effect of the 2019 Ordinance on the assessed interest.

### d. Right to Payoff Assessments

TEX. LOCAL GOVT. CODE § 372.018(f) provides that any "owner of an assessed property may pay at any time all or any part of the assessment, with interest that has accrued on the assessment, on any lot or parcel." Plaintiffs allege that Robert Reetz, counsel for the owner of Plaintiff The Village at Hunters Crossing, LLC, asked about its payoff amount in January and April 2019. George Hyde, attorney for the City, told Reetz that payoff amounts were not available at that time. Dkt. 64 at 17; Dkt. 64-2 at 2-3. Plaintiffs rely on a September 19, 2019, letter from Hyde to Reetz as evidence that property owners were not able to pay off their individual portion of the assessment to release their liens in violation of the PIDA Act.[5] Dkt 64 at 17; Dkt. 64-17 at 1 ("Should you wish to pay off the assessment lien at the amount owed prior to the adoption of the September 24, 2019 adopted SAP, it would dispose of the lien on all 283.001 acres, and the unpaid portion of that lien is $9,362,428.01."). Defendants counter that one of the fundamental purposes of the 2019 Ordinance was to formally apportion the 2004 capital assessment on a parcel-by-parcel basis so that property owners could pay off their portion and obtain lien releases. Dkt. 71 at 45 n.156.

---

[5] As noted, the 2019 Ordinance was adopted on September 24, 2019. The parties dispute whether the letter was sent before or after that date: on September 19, 2019, or by email on October 2, 2019. Dkt. 55 ¶ 43.

13

Defendants assert that Plaintiffs have offered no evidence that Plaintiffs ever tendered payoff to the City and were refused a lien release, either before or after adoption of 2019 Ordinance. *Id.*; Dkt. 77 at 2 n.2, 7.

Plaintiffs argue that the 2019 Ordinance deprived them of their property right to pay off assessments at any time. The 2019 Ordinance and its SAP, however, include an Assessment Roll listing the individual payoff amounts by property ID. Dkt. 64-16 at 48-66. Even if Defendants violated the PIDA Act by not providing payoff amounts on request before September 24, 2019, those actions do not bear on whether the 2019 Ordinance itself worked a constitutional deprivation. Plaintiffs submit no evidence that they were deprived of the ability to pay off their individual assessments after adoption of the 2019 Ordinance. Therefore, they cannot show that the 2019 Ordinance deprived them of this property right. Accordingly, the Court recommends that Plaintiffs' motion for summary judgment seeking a declaration that the 2019 Ordinance deprived them of a substantive due process right to payoff assessments be DENIED, and Defendants' motion for summary judgment that there was no constitutional deprivation of a right to payoff assessments under the 2019 Ordinance be GRANTED.

### e. Summary of Recommendations as to Property Interests

There are genuine issues of material fact as to whether the 2019 Ordinance deprived Plaintiffs of property interests relating to the adjustment of assessments, crediting of previous payments, and the limitation on interest under the PIDA Act. Accordingly, the Court recommends that the cross-motions for summary judgment seeking declarations as to the constitutionality of the 2019 Ordinance regarding those property interests be DENIED.

Because the PIDA Act does not explicitly limit a government's discretion to include interest in a principal assessment, Plaintiffs' request for a declaration that the 2019 Ordinance violates

14

their property right in the exclusion of interest from the principal assessment fails as a matter of law. The undersigned recommends that the Court grant summary judgment to Defendants on that claim and Plaintiffs' request for a declaration that the 2019 Ordinance violated their payoff rights.

### 2. Rational Basis

The Court must determine that the government deprived a plaintiff of a property right before considering whether government action was rational. *Brennan*, 834 F.2d at 1258. The undersigned has recommended summary judgment for the Defendants as to certain property interests on which Plaintiffs based their motion, and determined that there are genuine issues of material fact regarding the remaining interests asserted. Accordingly, the Court cannot determine the constitutionality of the 2019 Ordinance as a matter of law and need not consider whether Plaintiffs have met their burden to negate any conceivable rational basis for the 2019 Ordinance.

### C. Procedural Due Process

A government violates procedural due process when it acts without appropriate safeguards to protect individual property interests. *Roth*, 408 U.S. at 576. In their cross-motion, Defendants assert that the Plaintiffs' procedural due process claims are barred by a two-year statute of limitations. Dkt. 71 at 51. The statute of limitations may be raised in a motion for summary judgment as an affirmative defense against claims. *P.M.I. Servs. N. Am., Inc. v. Enduro Pipeline Servs.*, No. EP-16-CV-442-PRM, 2018 WL 8131759, at *3 (W.D. Tex. Jan. 16, 2018). The affirmative defense of limitations requires the moving party to:

> (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury.

*Id.* (citing *KPMG Peat Marwick v. Harrison Cnty. Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)). If the movant establishes that the statute of limitations bars the action, the nonmovant must offer evidence to raise a fact issue to avoid limitations. *Id.*

Defendants assert that, because the City complied with Section 372.013's annual meeting requirement in 2017 and 2018, Plaintiffs' procedural due process claims brought in 2019 are barred by a two-year statute of limitations. Dkt. 71 at 50-51. Defendants argue that Plaintiffs had general notice that their properties were within a PID and subject to existing liens and reassessments. Dkt. 71 at 19 n.70, 32, 34. Defendants assert that they gave "public notice" of meetings regarding the PID at various times between 2012 and 2018, and that some of the plaintiffs took part in the annual board meetings of the LGC at which the PID and SAPs were discussed. Dkt. 71 at 22-25; Dkt. 75 at 11. Plaintiffs assert that they did not receive notice and the opportunity to be heard to object to the additional capital improvement expenses and interest as they were incurred from 2004-2019. Dkt. 75 at 6, 42. They also assert their injury did not accrue until passage of the 2019 Ordinance increased the assessment. *Id.*; Dkt. 75 at 38.

The date on which Plaintiffs' alleged injury accrued has not been conclusively established because it depends on resolution of the factual disputes as to whether the 2019 Ordinance increased assessments for the PID. Accordingly, the Court recommends that Defendants' request for summary judgment that the statute of limitations bars Plaintiffs' procedural due process claims should be denied.

Plaintiffs' request for a declaration as a matter of law that the 2019 Ordinance violated procedural due process also should be denied because the Court has determined that there are disputes of material fact as to whether the 2019 Ordinance deprived Plaintiffs of certain property interests under the PIDA Act. *Roth*, 408 U.S. at 576 (stating that when the basis of a plaintiff's

16

§ 1983 claim is a violation of either type of due process, a plaintiff first must show the government deprived it of a property right).

### D.  Ultra Vires Acts and Injunctive Relief

Plaintiffs argue that the individual City Defendants acted *ultra vires* in adopting the 2019 Ordinance because they deviated from the powers granted to them by the PIDA Act, and that the Court should issue a permanent injunction preventing enforcement of the ordinance. Dkt. 64 at 20-21. Defendants assert that, because the City Defendants acted within their legislative authority and in compliance with the PIDA Act, there is no improper conduct or *ultra vires* act to enjoin. Dkt. 71 at 52.

Whether the City Defendants acted *ultra vires* in enacting the 2019 Ordinance depends on resolution of factual disputes regarding adjustment of assessments, crediting of previous payments, and limits on interest under the PIDA Act. Accordingly, the undersigned recommends that summary judgment on these claims be denied.

### IV.   Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiffs' Motion for Partial Summary Judgment (Dkt. 64) and **GRANT IN PART AND DENY IN PART** Defendants' Cross-Motion for Summary Judgment (Dkt. 71). The Court **RECOMMENDS** that the District Court **GRANT** Defendants' Cross-Motion only to the extent that Count 1 of Plaintiffs' Amended Complaint (Dkt. 55) requests a declaration that the 2019 Ordinance is invalid because it violates due process requirements relating to the right to (i) exclude interest from the principal assessment or (ii) payoff assessments, and otherwise **DENY** the motion.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 25, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE