IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAROLYN SMITH, *et al.*, | § | |
|     *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 1:19-cv-01054-RP |
| | § | |
| THE CITY OF BASTROP, TEXAS, et al., | § | |
|     *Defendants.* | § | |

**NOTICE TO THE COURT**

Defendants jointly file this notice with the documents listed below pursuant to Local Rule

16(e) in advance of the May 17, 2021 nonjury trial in the above-styled matter:

| | |
|---|---|
| Exhibit A | Stipulated Facts |
| Exhibit B | Defendants' Joint List of Trial Exhibits |
| Exhibit C | Defendants' Joint List of Trial Witnesses |
| Exhibit D | Defendants' Proposed Findings of Fact and Conclusions of Law |
| Exhibit E | Estimate of probable length of trial |

Respectfully submitted,

*/s/ Jeff Hobbs*

**MICHAEL J. WHELLAN**
State Bar No. 21265550
mwhellan@abaustin.com
**JEFFREY J. HOBBS**
State Bar No. 24012837
jhobbs@abaustin.com
**ARMBRUST & BROWN, PLLC**
100 Congress Avenue, Suite 1300
Austin, Texas  78701
(512) 435-2300 – telephone
(512) 435-2360 – facsimile
**ATTORNEYS FOR DEFENDANT
TF HUNTERS CROSSING, L.P.**

*/s/ Bradford E. Bullock*

**GEORGE E. HYDE**
State Bar No 45006157
ghyde@txlocalgovlaw.com
**BRADFORD E. BULLOCK**
State Bar No. 00793423
bbullock@txlocalgovlaw.com
**RUSSELL RODRIGUEZ HYDE
BULLOCK, LLP**
1633 Williams Drive, Building 2, Suite 200
Georgetown, Texas 78628
(512) 930-1317 – telephone
(866) 929-1641 – facsimile
**ATTORNEYS FOR THE CITY OF
BASTROP, TEXAS, CONNIE
SCHROEDER, WILLIE LEWIS
"BILL" PETERSON, DRUSILLA
ROGERS, LYLE NELSON, BILL
ENNIS, DOCK JACKSON, RICK
WOMBLE, MICHELLE DODSON,
AND TABITHA PUCEK**

### CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2021 the above and foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and electronic mail.

Rick Milvenan
Ian Davis
McGinnis Lochridge LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
rmilvenan@mcginnislaw.com
edavis@mcginnislaw.com
(512) 505-6331 - fax

*/s/ Jeff Hobbs*
Jeff Hobbs

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CAROLYN SMITH, THE VILLAGE AT** | § | |
| **HUNTERS CROSSING, L.L.C. and** | § | |
| **LIRTEX PROPERTIES, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE CITY OF BASTROP, TEXAS,** | § | |
| **CONNIE SCHROEDER, WILLIE LEWIS** | § | |
| **"BILL" PETERSON, DRUSILLA** | § | |
| **ROGERS, LYLE NELSON, BILL ENNIS,** | § | |
| **and DOCK JACKSON, each in his or her** | § | |
| **official capacity as a member of the City** | § | |
| **Council of the City of Bastrop, Texas, and** | § | **CIVIL ACTION NO. 1:19-cv-01054** |
| **LYNDA HUMBLE, DRUSILLA** | § | |
| **ROGERS, RICK WOMBLE, MICHELLE** | § | |
| **DODSON, LYLE NELSON AND** | § | |
| **TABITHA PUCEK, each in his or her** | § | |
| **official capacity as a Director of Hunters** | § | |
| **Crossing Local Government Corporation,** | § | |
| **and TF HUNTERS CROSSING, L.P. as** | § | |
| **successor-in-interest to FORESTAR (USA)** | § | |
| **REAL ESTATE GROUP, INC.,** | § | |
| | § | |
| **Defendants.** | | |

**STIPULATED FACTS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT L. PITMAN:

Pursuant to Local Rule CV-16(e)(3), Plaintiffs Carolyn Smith, The Village at Hunters Crossing, L.L.C., and LIRTEX Properties, LLC, ("Plaintiffs") and Defendants City of Bastrop, Texas, Connie Schroeder, Willie Lewis "Bill" Peterson, Drusilla Rogers, Lyle Nelson, Bill Ennis, Dock Jackson, Paul Hofmann, Rick Womble, Michelle Dodson and Tabitha Pucek ("City Defendants"), and TF Hunters Crossing, LP (combined "Defendants") file the following stipulated facts for trial in the above-referenced and numbered case:

**EXHIBIT A**

1. On September 11, 2001, the City of Bastrop (the "City") approved Resolution No. R-2001-19.

2. On November 11, 2003, the City approved Resolution No. R-2003-34.

3. On November 11, 2003, the City approved Resolution No. R-2003-36.

4. On November 13, 2003, the City published notice in the *Bastrop Advertiser* of a public hearing to be held on November 25, 2003 regarding Ordinance No. 2003-35.

5. On November 25, 2003, the City Council approved the first reading of Ordinance No. 2003-35.

6. On December 9, 2003, the City adopted Ordinance No. 2003-35 (the "2003 Ordinance").

7. On February 2, 2004, the 2003 Ordinance was recorded as document no. 200401641 in the real property records of Bastrop County.

8. At the time the 2003 Ordinance was enacted, the original PID developer, Sabine Investment Company ("Sabine"), owned all of the properties in the PID except for three properties: (i) "HXC-1 (Home Depot Lot 1) (property ID no. 90301); (ii) HXC-1 (Chilis Lot 1) (property ID no. 92325); and (iii) HXC-1 (Balance of Retail Lot 2) (property ID no. 95379).

9. On February 24, 2004, the original PID developer, Sabine, entered into a Development and Reimbursement Agreement with the City.

10. On November 11, 2004, the City published notice in the *Bastrop Advertiser* of a public hearing to be held on November 23, 2004, to consider an amendment to the 2003 Ordinance.

11. On December 14, 2004, the City adopted Ordinance No. 2004-42 (the "2004 Ordinance").

12. On December 27, 2004, the 2004 Ordinance was recorded as document no. 200420005 in the real property records of Bastrop County.

13. Plaintiff Carolyn Smith is an individual residing in Bastrop, Texas, acting as Trustee of the Smith Family Revocable Trust.

14. Carolyn Smith's residence is identified as property ID no. R95408 in Ordinance No. 2019-40 (the "2019 Ordinance").

15. Plaintiff LIRTEX Properties, LLC ("LIRTEX") is a Texas limited liability company doing business in Bastrop, Texas.

16. LIRTEX owns the real property identified as HXC-2 in the 2003 Ordinance, and property ID nos. R114958 and R30102 in the 2019 Ordinance.

17. Plaintiff The Village at Hunters Crossing, LLC ("VHC") is a Texas limited liability company doing business in Bastrop, Texas.

18.   VHC owns portions of the real property identified as HXC-5, HXM-1, and HXP-4 in the 2003 Ordinance, and property ID no. R104899 in the 2019 Ordinance.

19.   Defendant The City of Bastrop, Texas is a home-rule municipality located in Bastrop County, Texas.

20.   Defendant The Hunters Crossing Local Development Corporation ("HCLGC") was incorporated on March 23, 2004.

21.   Defendant Connie Schroeder is sued in her official capacity as Mayor and Council Member of the City of Bastrop.

22.   Defendant Willie Lewis "Bill" Peterson is sued in his official capacity as a Council Member of the City of Bastrop.

23.   Defendant Drusilla Rogers is sued in her official capacity as a Council Member of the City of Bastrop and in her official capacity as Director of Hunters Crossing Local Government Corporation

24.   Defendant Lyle Nelson is sued in his official capacity as a Council Member of the City of Bastrop and in his official capacity as Director of Hunters Crossing Local Government Corporation

25.   Bill Ennis is sued in his official capacity as a Council Member of the City of Bastrop.

26.   Dock Jackson is sued in his official capacity as a Council Member of the City of Bastrop.

27.   Paul Hofmann is sued in his official capacity as Director of Hunters Crossing Local Government Corporation.

28.   Rick Womble is sued in his official capacity as Director of Hunters Crossing Local Government Corporation.

29.   Michelle Dodson is sued in her official capacity as Director of Hunters Crossing Local Government Corporation.

30.   Tabitha Pucek is sued in her official capacity as Director of Hunters Crossing Local Government Corporation.

31.   At the inception of the PID, the original PID developer was Sabine Investment Company ("Sabine").

32.   Sometime in 2005, Sabine changed its name to Forestar (USA) Real Estate Group, Inc. ("Forestar").

33.  At the time the 2003 Ordinance was enacted, the original developer owned a majority of the land comprising the PID.

34.  Defendant TF Hunters Crossing is a Delaware limited partnership with its principal place of business in Miami, Florida.

35.  In February 2018, TF Hunters Crossing executed a contract with the original PID developer, Sabine/Forestar.

36.  Pursuant to the TFHC-Sabine/Forestar contract, Sabine/Forestar assigned to TFHC the right to receive all PID developer reimbursements under the 2004 Development and Reimbursement Agreement with the City.

37.  On February 7, 2018, pursuant to the TFHC-Sabine/Forestar contract, Sabine/Forestar also conveyed to TFHC by special warranty deed roughly 38 acres of land in the PID.

38.  In 2005, the original PID developer, Sabine/Forestar, broke ground on PID improvement projects.

39.  Neither the City nor the HCLGC has incurred any project costs for capital improvements associated with the PID.

40.  The City has never issued bonds in connection with the PID.

41.  The City never issued a time warrant or temporary note to the PID developer to fund the construction of capital improvements.

42.  The original developer never borrowed any money from the City to pay for capital improvement project costs associated with the PID.

43.  TFHC has never borrowed any money from the City to pay for capital improvement project costs associated with the PID.

44.  The City did not, at any time from 2005 through August 2019, update or amend the 2003 Ordinance, or adopt a new ordinance governing the PID, to include capital improvement expenditures incurred or spent by the PID developer from 2005 through 2018

45.  In 2011, the HCLGC commissioned an independent accountant, Singleton, Clark & Company, PC ("Singleton") to perform an Analysis of Developer Costs from July 1, 2007 to June 30, 2010 (the "Singleton Report").

46.  When the Singleton Report was issued on July 12, 2011, the original developer had completed the majority of all capital improvement projects in the PID.

47.  On September 28, 2017, the City Council reviewed the 2003 service and assessment plan.

48.  On September 28, 2017, the City of Bastrop adopted Ordinance No. 2017-26.

49.  On September 25, 2018, the City Council reviewed the 2003 service and assessment plan.

50.     On September 25, 2018, the City of Bastrop adopted Ordinance No. 2018-24.

51.     On September 24, 2019, the City of Bastrop adopted Ordinance No. 2019-40.

52.     As of September 24, 2019, the Bastrop County Tax Assessor collected an aggregate of $2,05,097.71 in capital assessment payments from all PID property owners, the entirety of which was reimbursed by the City to the Developer pursuant to the 2004 Development and Reimbursement Agreement.

53.     From the inception of the PID until September 24, 2019, the Bastrop County Tax Assessor collected PID assessments by property ID.

54.     The annual assessment installments were identified as one aggregate sum that included both the annual capital assessment installment and the annual operations and maintenance ("O&M") assessment installment.

55.     On August 19, 2019, the City hosted a town hall meeting to review the proposed 2019 amended and restated service and assessment plan ("2019 SAP").

56.     At the August 19, 2019 town hall meeting, the City provided PID property owners with a four-page pamphlet (the "Town Hall Pamphlet") explaining the impetus behind the 2019 Ordinance as well as its contents.

57.     On August 31, 2019, the City published notice in the *Bastrop Advertiser* of a public hearing to be held on September 10, 2019 to consider the 2019 annual review of the service and assessment plan.

58.     On September 10, 2019, the City approved the first reading of Ordinance No. 2019-40.

59.     On September 12, 2019, the City published notice in the *Bastrop Advertiser* of a public hearing to be held on September 24, 2019 to consider the annual review of the 2019 annual review of the service and assessment plan.

60.     On September 24, 2019, the City of Bastrop adopted Ordinance No. 2019-40.

61.     On September 24, 2019, the City of Bastrop adopted Resolution No. R-2019-86.

62.     The capital improvement costs associated with PID improvement projects have all been incurred by TFHC and its predecessor in interest, Sabine/Forestar.

Respectfully submitted,

| | |
|---|---|
| By:  /s/ Richard D. Milvenan<br><br>Richard D. Milvenan<br>Texas Bar No. 14171800<br>Ian M. Davis<br>Texas Bar No. 24120793<br><br>**MCGINNIS LOCHRIDGE LLP**<br>600 Congress Avenue, Suite 2100<br>Austin, Texas 78701<br>Telephone:  (512) 495-6000<br>Facsimile:  (512) 505-6331<br>rmilvenan@mcginnislaw.com<br>idavis@mcginnislaw.com<br>**COUNSEL FOR PLAINTIFFS** | By:  /s/ George E. Hyde<br><br>George E. Hyde<br>Texas Bar No. 45006157<br>Bradford E. Bullock<br>Texas Bar No. 00793423<br><br>**RUSSELL RODRIGUEZ HYDE BULLOCK, LLP**<br>1633 Williams Drive, Bldg. 2, Suite 200<br>Georgetown, Texas 78628<br>ghyde@txlocalgovlaw.com<br>bbullock@txlocalgovlaw.com<br>(866) 929-1641 – fax<br><br>**COUNSEL FOR DEFENDANT CITY OF BASTROP AND INDIVIDUAL DEFENDANTS** |
| By:   /s/ Michael J. Whellan<br><br>Michael J. Whellan<br>Texas Bar. No. 21265550<br>Jeffrey J. Hobbs<br>Texas Bar No. 24012837<br><br>**Armbrust & Brown, PLLC**<br>100 Congress Avenue, Suite 1300<br>Austin, Texas  78701<br>(512) 435-2300 – telephone<br>(512) 435-2360 – facsimile<br>mwhellan@abaustin.com<br>jhobbs@abaustin.com<br><br>**COUNSEL FOR DEFENDANT**<br>**TF HUNTERS CROSSING, L.P.** | |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CAROLYN SMITH, *et al.*,                §
    *Plaintiffs,*                        §
                                        §
v.                                       §          Case No. 1:19-cv-01054-RP
                                        §
THE CITY OF BASTROP, TEXAS, et al.,      §
    *Defendants.*                        §

**DEFENDANTS' JOINT LIST OF TRIAL EXHIBITS**

Defendants jointly provide the list below of exhibits they intend to offer at the trial of the

above-styled matter.  Parenthetical references either identify the Bates labels for documents

produced in discovery or the prefix "MSJ Exhibit ___" which refer to exhibits attached to

Defendants' Joint Response to Plaintiffs' Motion for Partial Summary Judgment and Cross-

Motion for Summary Judgment.

| Exhibit No. | Description |
|---|---|
| 1 | Special Warranty Deed dated July 30, 2004 (PLAINTIFFS 000465-466) |
| 2 | Deed Without Warranty dated December 2, 2014 (COB001-003) |
| 3 | Special Warranty Deed with Vendor's Lien dated May 15, 2015 (PLAINTIFFS 000032-40) |
| 4 | Special Warranty Deed dated November 16, 2017 (TFHC 88859-88860) |
| 5 | Special Warranty Deed dated December 23, 2015 (TFHC 88852-88858) |
| 6 | State of Delaware Certificate of Limited Partnership for TF Hunters Crossing, LP dated January 18, 2018 (TFHC 88861-88862) |
| 7 | Plaintiff Carolyn Smith's Answers to First Set of Interrogatories and Responses to First Request for Production of TF Hunters Crossing, LP |
| 8 | Plaintiff The Village at Hunters Crossing, LLC's Answers to First Set of Interrogatories and Responses to First Request for Production of TF Hunters Crossing, LP |
| 9 | Plaintiff LIRTEX Properties, LLC's Answers to First Set of Interrogatories and Responses to First Request for Production of TF Hunters Crossing, LP |
| 10 | Resolution No. R-2001-19 (MSJ Exhibit 1) |
| 11 | Resolution No. R-2003-34 (MSJ Exhibit 2) |
| 12 | Ordinance No. 2003-35 (MSJ Exhibit 3) |
| 13 | 2003 Service and Assessment Plan (MSJ Exhibit 3A) |

| 14 | Ordinance No. 2003-35, pg. 1 of recorded instrument (MSJ Exhibit 3B) |
|----|----|
| 15 | Ordinance No. 2017-26 (MSJ Exhibit 4) |
| 16 | Ordinance No. 2018-24 (MSJ Exhibit 5) |
| 17 | Resolution No. R-2019-86 (MSJ Exhibit 6) |
| 18 | Ordinance No. 2019-40 (MSJ Exhibit 7) |
| 19 | Ordinance No. 2004-42 (MSJ Exhibit 8) |
| 20 | Agenda, public notices, and minutes from Hunters Crossing Local Government Corporation approving and adopting SAP for Fiscal Years 2013, 2014, 2015, 2016, 2017 (MSJ Exhibit 9) |
| 21 | Hunters Crossing Local Government Corporation Articles of Incorporation (MSJ Exhibit 10) |
| 22 | Hunters Crossing Local Government Corporation First Amended Bylaws (MSJ Exhibit 11) |
| 23 | 2011 Singleton Clark Analysis of Developer Costs (MSJ Exhibit 12) |
| 24 | 2004 PID Agreement for Developer Reimbursement (MSJ Exhibit 13) |
| 25 | City of Bastrop Council Meeting Minutes 9/10/2019 (MSJ Exhibit 14) |
| 26 | PID Assessment Lien Release – Undeveloped Lot (MSJ Exhibit 15) |
| 27 | Final Plat Hunters Crossing Section Three (MSJ Exhibit 22) |
| 28 | Bastrop Advertiser Notices of Public Hearings on 2019 Amended SAP (MSJ Exhibit 23) |
| 29 | Council Minutes appointing Trey Job to HCLGC (MSJ Exhibit 25) |
| 30 | City Secretary Business Records Affidavit (MSJ Exhibit 29) |
| 31 | Assessment Reconciliation Spreadsheet (MSJ Exhibit 26-1, filed on April 19, 2021 as Corrected Affidavit of Tracy Waldron) |

Respectfully submitted,


/s/ Jeff Hobbs

**MICHAEL J. WHELLAN**
State Bar No. 21265550
mwhellan@abaustin.com
**JEFFREY J. HOBBS**
State Bar No. 24012837
jhobbs@abaustin.com
**ARMBRUST & BROWN, PLLC**
100 Congress Avenue, Suite 1300
Austin, Texas  78701
(512) 435-2300 – telephone
(512) 435-2360 – facsimile
**ATTORNEYS FOR DEFENDANT**

/s/ Bradford E. Bullock

**GEORGE E. HYDE**
State Bar No 45006157
ghyde@txlocalgovlaw.com
**BRADFORD E. BULLOCK**
State Bar No. 00793423
bbullock@txlocalgovlaw.com
**RUSSELL RODRIGUEZ HYDE BULLOCK, LLP**
1633 Williams Drive, Building 2, Suite 200
Georgetown, Texas 78628
(512) 930-1317 – telephone
(866) 929-1641 – facsimile

**Defendants' Joint List of Trial Exhibits – Page 2 of 3**

**TF HUNTERS CROSSING, L.P.**  **ATTORNEYS FOR THE CITY OF BASTROP, TEXAS, CONNIE SCHROEDER, WILLIE LEWIS "BILL" PETERSON, DRUSILLA ROGERS, LYLE NELSON, BILL ENNIS, DOCK JACKSON, RICK WOMBLE, MICHELLE DODSON, AND TABITHA PUCEK**

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2021 the above and foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and electronic mail.

George E. Hyde
Bradford E. Bullock
Russell Rodriguez Hyde Bullock, LLP
1633 Williams Drive, Bldg. 2, Suite 200
Georgetown, Texas 78628
ghyde@txlocalgovlaw.com
bbullock@txlocalgovlaw.com
(866) 929-1641 - fax

Rick Milvenan
Ian Davis
McGinnis Lochridge LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
rmilvenan@mcginnislaw.com
edavis@mcginnislaw.com
(512) 505-6331 - fax

_____*/s/ Jeff Hobbs*_____
Jeff Hobbs

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAROLYN SMITH, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 1:19-cv-01054-RP |
| | § | |
| THE CITY OF BASTROP, TEXAS, et al., | § | |
| *Defendants.* | § | |

## DEFENDANTS' JOINT LIST OF TRIAL WITNESSES

1.  John Brian
    6310 Capital Drive, Suite 130
    Lakewood Ranch, Florida 34202
    (941-388-0707)

2.  Misty Ventura
    9406 Biscayne Blvd.
    Dallas, Texas 75218
    (214) 328-1101

3.  George Hyde
    1633 Williams Drive, Suite 200
    Georgetown, Texas 78628
    (512) 930-1317

4.  Julie Forte
    6317 Preston Road, Suite 200
    Dallas, Texas 75034
    (972) 668-6400

5.  Patrick Bourne
    13492 Research Blvd., Suite 120-214
    Austin, Texas 78750
    (512) 275-6290

6.  Trey Job
    1311 Chestnut Street
    Bastrop, Texas 78602
    (512)332-8800

**Defendants' Joint List of Trial Witnesses – Page 1 of 3**          **EXHIBIT C**

7.     Tracy Waldron
       1311 Chestnut Street
       Bastrop, Texas 78602
       (512)332-8800

8.     Ann Franklin
       1311 Chestnut Street
       Bastrop, Texas 78602
       (512)332-8800

9.     Paul Hofmann
       1311 Chestnut Street
       Bastrop, Texas 78602
       (512)332-8800

Respectfully submitted,


*/s/ Jeff Hobbs*                              */s/ Bradford E. Bullock*
**MICHAEL J. WHELLAN**                        **GEORGE E. HYDE**
State Bar No. 21265550                        State Bar No 45006157
mwhellan@abaustin.com                         ghyde@txlocalgovlaw.com
**JEFFREY J. HOBBS**                          **BRADFORD E. BULLOCK**
State Bar No. 24012837                        State Bar No. 00793423
jhobbs@abaustin.com                           bbullock@txlocalgovlaw.com
**ARMBRUST & BROWN, PLLC**                    **RUSSELL RODRIGUEZ HYDE**
100 Congress Avenue, Suite 1300               **BULLOCK, LLP**
Austin, Texas  78701                          1633 Williams Drive, Building 2, Suite 200
(512) 435-2300 – telephone                    Georgetown, Texas 78628
(512) 435-2360 – facsimile                    (512) 930-1317 – telephone
**ATTORNEYS FOR DEFENDANT**                   (866) 929-1641 – facsimile
**TF HUNTERS CROSSING, L.P.**                 **ATTORNEYS FOR THE CITY OF**
                                              **BASTROP, TEXAS, CONNIE**
                                              **SCHROEDER, WILLIE LEWIS**
                                              **"BILL" PETERSON, DRUSILLA**
                                              **ROGERS, LYLE NELSON, BILL**
                                              **ENNIS, DOCK JACKSON, RICK**
                                              **WOMBLE, MICHELLE DODSON,**
                                              **AND TABITHA PUCEK**


**Defendants' Joint List of Trial Witnesses – Page 2 of 3**

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2021 the above and foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and electronic mail.

Rick Milvenan
Ian Davis
McGinnis Lochridge LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
rmilvenan@mcginnislaw.com
edavis@mcginnislaw.com
(512) 505-6331 - fax


_____/s/ Jeff Hobbs_____
Jeff Hobbs

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAROLYN SMITH, THE VILLAGE AT HUNTERS CROSSING, L.L.C. AND LIRTEX PROPERTIES, LLC, <br> *Plaintiffs,* <br><br> v. <br><br> THE CITY OF BASTROP, TEXAS, CONNIE SCHROEDER, WILLIE LEWIS "BILL" PETERSON, DRUSILLA ROGERS, LYLE NELSON, BILL ENNIS, and DOCK JACKSON, each in his or her official capacity as a member of the City Council of the City of Bastrop, Texas, DRUSILLA ROGERS, RICK WOMBLE, MICHELLE DODSON, LYLE NELSON and TABITHA PUCEK, each in his or her official capacity as a Director of Hunters Crossing Local Government Corporation, FORESTAR (USA) REAL ESTATE GROUP, INC., and TF HUNTERS CROSSING, L.P., as successor-in-interest to FORESTAR (USA) REAL ESTATE GROUP, INC., <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:19-cv-01054 |

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITTMAN:

Defendants jointly file their Proposed Findings of Fact and Conclusions of Law:

## I.  Findings of Fact

1.  On July 18, 2001, a petition meeting the requirements of section 372.005 of the Texas Local Government Code was filed with the City Secretary of the City of Bastrop, Texas ("City" or "Bastrop") requesting the creation of a public improvement district ("PID"), a true and correct copy of which was admitted into evidence for all purposes.

2. On August 25, 2001, notice of a public hearing on the advisability of the establishment of the proposed PID was published in the *Bastrop Advertiser*, a newspaper of general circulation in the City and the proposed PID, which was then located in the City's extraterritorial jurisdiction ("ETJ"), and mailed to property owners in the proposed PID as required by Section 372.009 of the Texas Local Government Code, a true and correct copy of which was admitted into evidence for all purposes.

3. On September 11, 2001, after holding a public hearing on the advisability of the establishment of the proposed PID at which all persons wishing to speak for or against the establishment of the PID were given an opportunity to speak, the City Council of the City passed and approved Resolution R-2001-19, which authorized and established the Hunters Crossing Public Improvement District ("Hunters Crossing PID") as set forth by the terms contained therein, a true and correct copy of which was admitted into evidence for all purposes.

4. Pursuant to Resolution R-2001-19, the City found it advisable that improvements described as Public Improvements, as described in Exhibit B attached thereto, be undertaken and provided in the PID.

5. Pursuant to Resolution R-2001-19, the City put the public on notice that the estimated cost of the Public Improvements described in Exhibit B attached thereto was $14.5 million, not including interest.

6. Pursuant to Resolution R-2001-19, the City put the public on notice that 100% of the costs of the Public Improvements described in Exhibit B attached thereto, would be apportioned to the Hunters Crossing PID and 0% would be apportioned to the City.

7. On September 22, 2001, the City published Resolution R-2001-19 authorizing and creating the establishment of the Hunters Crossing PID in the *Bastrop Advertiser*, a newspaper of general circulation in the City and the City's ETJ where the Public Improvements were to be undertaken, a true and correct copy of which was admitted into evidence for all purposes.

8. On October 25, 2003, notice of a public hearing to be held on November 25, 2003 to consider the proposal to assess benefitted property in the Hunters Crossing PID was published in the *Bastrop Advertiser*, a newspaper of general circulation in the City's ETJ, and mailed to property owners in the Hunters Crossing PID as required by section 372.016 of the Texas Local Government Code, a true and correct copy of which was admitted into evidence for all purposes.

9. On November 11, 2003, the City passed and approved Resolution R-2003-34, which amended Resolution R-2001-19, as set forth by the terms contained therein, a true and correct copy of which was admitted into evidence for all purposes.

10. Resolution R-2003-34 amended Resolution R-2001-19, in pertinent part, providing that the estimated cost of the PID Public Improvements (including maintenance and operation) was approximately $12.476 Million, not including interest.

11. On November 11, 2003, after the City determined the estimated costs of the PID Public Improvements under Resolution R-2001-19, as amended by Resolution R-2003-34, the City passed and approved Resolution R-2003-36, which filed the proposed assessment roll for the Hunters Crossing PID with the City Secretary, directed the City Secretary to make the proposed assessment roll available for public inspection, and directed the City Secretary to publish the notice of the November 25, 2003 public hearing as required by section

372.016 of the Texas Local Government Code, a true and correct copy of which was admitted into evidence for all purposes.

12. On November 25, 2003, the City Council of the City held a public hearing at which all interested persons were given the opportunity to speak for or against the levy of the proposed assessments against benefitted property within the Hunter's Crossing PID; and, after there were no comments from the public, the City closed the public hearing.

13. On December 9, 2003, the City passed and approved Ordinance No. 2003-35, which levied an assessment in lump sum for capital costs on approximately 283.001 acres of land comprising the PID in the total amount of $11.962 Million ($7.365 Million for commercial and multi-family public infrastructure and $4.597 Million for single-family residential public infrastructure), a true and correct copy of which was admitted into evidence for all purposes.

14. Ordinance No. 2003-35 provides the methodology for calculating apportionment of the lump sum Capital Assessment on a parcel-by-parcel basis based on square footage of Commercial and Multi-Family parcels and the number of lots for Single-Family Residential parcels. The City Council determined such methodology is substantially in proportion to the benefits conferred to such parcels by the PID Public Improvements and established substantial justice and equality and uniformity between respective owners. Ordinance No. 2003-35 establishes an Annual Assessment of $0.071 per square foot for Commercial parcels, $0.068 per square foot for Multi-Family parcels and a principal amount of $6,192 per lot for Single-Family Residential parcels or a total of $8,799 per lot if paid in annual installments.

15. Ordinance No. 2003-35 also levied an assessment in lump sum for maintenance and operations costs related to public improvements totaling $5.4 Million over a period of 25 years.

16. Ordinance No. 2003-35 bases these assessment amounts on 2003 dollars, assumes no inflation, and provides that estimated costs are based on engineers' estimates, are approximate and may increase or decrease. Schedules supporting estimated costs are attached to Ordinance No. 2003-35 as Exhibit F (Tables A-F) and are summarized in Exhibit G to the Ordinance.

17. The purpose of the PID, as set forth in Ordinance No. 2003-35, is to finance certain public improvement projects that confer a special benefit on property that comprises the approximately 283.001 acres within the District.

18. Adopted as part of Ordinance No. 2003-35 is the 2003 Service and Assessment Plan ("2003 SAP"), which reflects the lump sum assessment shown on the assessment roll ("2003 Assessment Roll") attached as Exhibit E-1 and E-2 to Ordinance No. 2003-35.

19. Ordinance No. 2003-35 was filed in the Official Property Records of Bastrop County, Volume 1405, Page 572, on February 2, 2004

20. On February 24, 2004, Articles of Incorporation of the Hunters Crossing Local Government Corporation ("Hunters Crossing LGC"), a perpetual, public, nonprofit corporation created pursuant to Subchapter D, Chapter 431 of the Texas Transportation Code were executed. The Hunters Crossing LGC was created to provide governmental services related to the City-approved Service Plan for the Hunters Crossing PID. A true and correct copy of the Articles of Incorporation was admitted into evidence for all purposes.

21. March 23, 2004, the Office of the Secretary of State of Texas issued a Certificate of Incorporation, Filing Number 800322750, for the Hunters Crossing LGC, a true and correct copy of which was admitted into evidence for all purposes.

22. On December 14, 2004, the City Council passed and approved Ordinance No. 2004-42, which corrected omissions or mistakes discovered in the 2003 Assessment Roll consisting of scrivener's and mathematical errors as well as a failure to denote the effects of rounding in the conversion of square feet.

23. On July 12, 2011, Singleton, Clark & Company, PC, prepared an Independent Accountant's Report and Analysis of Developer Costs ("Singleton Clark Report") regarding the Hunters Crossing PID, between July 1, 2007 and June 30, 2010, a true and correct copy of which was admitted into evidence for all purposes.

24. The Singleton Clark Report focused on costs submitted by the then-developer, Forestar Group, Inc., that were proposed to be reimbursed under the terms of the original Reimbursement Agreement. Singleton Clark found that as of June 30, 2010, actual examined developer costs totaled $12,338,635 (for capital construction), $826,007 (for engineering, planning, surveying), and $184,793 (for legal fees). Subtracting developer's contribution, the Singleton Clark Report determined that as of June 30, 2010, the capital recovery amount before factoring in capitalized interest as a capital cost totaled $10,823,686.

25. Singleton Clark separately determined that if interest were capitalized at a rate of six percent (6%) for ten (10) years, this additional capital cost would total $6,494,212, bringing the total net capital recovery amount to $17,317,898 as of June 30, 2010.

26. Singleton Clark concluded that as of June 30, 2010, the actual capital costs for the Hunters Crossing development exceeded the amount initially estimated in the 2003 Ordinance by forty-five percent (45%).

27. The official meeting minutes of the Hunters Crossing LGC reflect that a quorum of its Board met in a duly noticed open public meeting on September 23, 2013, a true and correct copy of which were admitted into evidence for all purposes.

28. The Hunters Crossing LGC Board held a public hearing to receive input from the citizens of Bastrop related to the proposed budget for the Hunters Crossing PID for the budget year 2012-2013. Chairman Mike Talbot provided the public with a summary of the PID operations and budget, as follows.

29. The Hunters Crossing PID had an initial capital investment paid by the developer Sabine Investments for approximately $12 million dollars for the design and installation of various public infrastructure and improvements. No increase in the capital component of the PID expenditures has ever been requested or approved.  As of June 30, 2010, the Developer's then-current capital cost had increased to $17,317,898; however, no amendment to the Capital assessment was proposed for fiscal year 2014. Therefore, the capital assessment was set on the basis of the original debt of $11,961,260 as approved by the City Council in 2003. The original amount of the 2003 SAP of $11,961,260 was used in the public notice for the 2013 meeting of the Hunters Crossing LGC and included no "new" or "additional" capital components to be added to the original 2003 SAP.

30. Upon conclusion of the public hearing, the Hunters Crossing PID capital assessment was unchanged and the budget concerning operation and maintenance fees for the year 2012-2013 was unanimously approved by the Hunters Crossing LGC.

31. The official meeting minutes of the Hunters Crossing LGC reflect that a quorum of its Board met in a duly noticed open public meeting on September 10, 2014, a true and correct copy of which were admitted into evidence for all purposes.

32. The Hunters Crossing LGC held a workshop session, open to the public, concerning the 2014-2015 Hunters Crossing PID budget proposed changes to the operations and maintenance for the year 2014-2015.

33. The Hunters Crossing LGC Board unanimously approved a motion to conduct a public hearing on September 24, 2014 for the purpose of adopting a proposed budget.

34. The official meeting minutes of the Hunters Crossing LGC reflect that a quorum of its Board met in a duly noticed open public meeting on September 24, 2014, a true and correct copy of which were admitted into evidence for all purposes.

35. The Hunters Crossing LGC held a public hearing on the proposed changes to the 2015 budget and upon the conclusion of the public hearing Board member Brandon Johnson moved to approve a resolution adopting the annual budget, providing reimbursement for historical Capital expenditures and on-going operations and maintenance expenditures for public improvements in the Hunters Crossing PID. The motion was seconded by Carlos Liriano and the motion carried unanimously.

36. The official meeting minutes of the Hunters Crossing LGC reflect that a quorum of its Board met in a duly noticed open public meeting on August 17, 2015, a true and correct copy of which were admitted into evidence for all purposes.

37. The Hunters Crossing LGC held a workshop session, open to the public, concerning the 2015-2016 Hunters Crossing PID budget related to operations and maintenance. Board Member Carlos Liriano was present for this public meeting. After discussion of the budget

by Board members, including Carlos Liriano, the Board unanimously approved a motion to hold a meeting on September 23, 2015 regarding possible action on the proposed 2016 PID budget.

38. The official meeting minutes of the Hunters Crossing LGC reflect that a quorum of its Board met in a duly noticed open public meeting on September 23, 2015, a true and correct copy of which were admitted into evidence for all purposes.

39. The Hunters Crossing LGC Board, which included Board Member Carlos Liriano, held a public hearing on the proposed Fiscal Year 2016 Budget and Fiscal Year 2016 Operations and Maintenance Assessment for the Hunters Crossing PID.

40. Upon conclusion of the public hearing, the Hunters Crossing LGC Board unanimously adopted a resolution to approve the annual budget for Fiscal Year 2016, providing reimbursements for historic capital expenditures and to on-going operations and maintenance expenditures for public improvements in the Hunters Crossing PID.

41. Upon motion of Board member Carlos Liriano, the Hunters Crossing LGC Board also unanimously approved a motion to acknowledge the submittal of capital assessments attributed to the Hunters Crossing PID. This motion was in response to communication received from developer Forestar (USA) Real Estate Group, Inc. related to reimbursement for capital assessments attributed to the Hunters Crossing PID.

42. The official meeting minutes of the Hunters Crossing LGC reflect that a quorum of its Board met in a duly noticed open public meeting on September 28, 2016, a true and correct copy of which was admitted into evidence for all purposes.

43. The Hunters Crossing LGC Board, which included Board Member Carolyn Smith, held a public hearing on the proposed Fiscal Year 2016 Budget and Fiscal Year 2016 Operations

and Maintenance Assessment for the Hunters Crossing PID. Carlos Liriano attended the public hearing as a member of the public.

44. Following a discussion of the Fiscal Year 2017 budget, the public hearing was closed and the Hunters Crossing LGC Board unanimously approved a resolution adopting the annual budget for Fiscal Year 2017, providing reimbursements for historic capital expenditures and to on-going operations and maintenance expenditures for public improvements in the Hunters Crossing PID.

45. On September 26, 2018, in a duly noticed public meeting, following a public hearing, the City Council of Bastrop read and approved on first reading Ordinance No. 2017-26. On September 28, 2017, in a duly noticed public meeting, the City read and adopted on second and final reading Ordinance No. 2017-26, a true and correct copy of which was admitted into evidence for all purposes.

46. Ordinance No. 2017-26 provides that the Service Plan as historically reviewed and updated by the Hunters Crossing LGC was conducted in accordance with applicable law and the City accepted all past and present reviews conducted by the Hunters Crossing LGC.

47. Ordinance No. 2017-26 also provides that the City Council determined that Capital assessment roll as include in Exhibit A thereto, which relates solely to the original historic capital costs, continued to be correct and should not be changed from the 2003 SAP and approved the capital assessment roll of the Hunters Crossing PID for Fiscal Year 2018.

48. On September 11, 2018, in a duly noticed public meeting, following a public hearing, the City Council of Bastrop read and approved on first reading Ordinance No. 2018-24. On September 25, 2018, in a duly noticed public meeting, the City Council of Bastrop read

and adopted on second reading Ordinance No. 2018-24, a true and correct copy of which was admitted into evidence for all purposes.

49. Ordinance No. 2018-24 provides that the Service Plan as historically reviewed and updated by the Hunters Crossing LGC was conducted in accordance with applicable law and the City accepted all past and present reviews conducted by the Hunters Crossing LGC.

50. Ordinance No. 2018-24 also provides that the City Council determined that Capital assessment roll as include in Exhibit A thereto, which relates solely to the original historic capital costs, continued to be correct and should not be changed from the 2003 SAP and approved the capital assessment roll of the Hunters Crossing PID for Fiscal Year 2019.

51. On September 10, 2019, in a duly noticed public meeting, following a public hearing, the City Council of Bastrop read and approved on first reading Ordinance No. 2019-40. On September 24, 2019, in a duly noticed public meeting, following a public hearing, the City Council of Bastrop read and adopted on second reading Ordinance No. 2019-40, a true and correct copy of which was admitted into evidence for all purposes. Notice of the public hearing held on September 10, 2019 was published in the *Bastrop Advertiser*, a newspaper of general circulation in Bastrop County, on August 31, 2019, a true and correct copy of which was admitted into evidence for all purposes. Notice of the public hearing held on September 24, 2019 was published in the *Bastrop Advertiser*, a newspaper of general circulation in Bastrop County, on September 12, 2019, a true and correct copy of which was admitted into evidence for all purposes.

52. Adopted with and incorporated into Ordinance No. 2019-40, the 2019 Amended and Restated Service and Assessment Plan ("2019 SAP"), attached as Exhibit A to Ordinance

No. 2019-40 and incorporated therein for all purposes, recited the history of the Hunters Crossing PID, as reflected in the aforementioned Ordinances and Resolutions.

53. The 2019 SAP provides that Ordinance No. 2003-35 levied a lump sum capital assessment on approximately 283.011 acres of land that comprised the PID at $11,961,260 for Capital Assessments and $5,400,000 for the operation and maintenance of the PID. It further provides that under the 2019 SAP, the capital assessment was allocated on a parcel-by-parcel basis to 27.434 acres of commercial property, 24.523 acres of multi-family property, 510 single family lots, and 37.937 acres of undeveloped land.

54. The 2019 SAP explained changes to the PID property that the 2003 SAP did not anticipate or properly account for, including as of 2019: an increase in the number of single-family residential lots from 464 anticipated lots in the 2003 SAP to 510 actually developed lots; a decrease in the amount of acreage devoted to commercial property in the PID from 83.82 acres anticipated in the 2003 SAP to 27.434 acres actually developed as commercial property; and a decrease in the amount of acreage devoted to multi-family property in the PID from 34.32 acres anticipated in the 2003 SAP to 24.523 acres actually developed as multi-family property.

55. The 2019 SAP determined that as of 2019, the Original Developer had received reimbursements in the aggregate totaling $2,205,097.71 for approved expenditures for Authorized Improvements.

56. The 2019 SAP contains an Updated Service Plan, attached as Exhibit E thereto and incorporated for all purposes, provides that it covers at least five years, including the expended costs of the Authorized Improvements and the projected annual indebtedness for the Authorized Improvements.

57. The 2019 SAP allocates the Costs of Capital Improvements to the Assessed Property by Land Use Category: Commercial lots are allocated based on the square footage of each Parcel at an Annual Installment rate of $0.071 per square foot; Multi-family lots are allocated based on the square footage of each Parcel at an Annual Installment rate of $0.068 per square foot; Single-family residential lots are allocated on a per lot basis, totaling $8,799 per lot, which is calculated by adding the annual installment amounts found in the published 25-year payment schedule set forth in the 2003 SAP; and the remaining Undeveloped Lot, which totals 37.937 acres, is anticipated to be developed as multi-family property and will pay a Capital Assessment of $2,564,916.92 based on the square footage of the Parcel at an Annual Installment rate of $0.068 per square foot.

58. The 2019 SAP finds a direct and special benefit to the Assessed Property from the Authorized Improvements, which is greater than or equal to the aggregate amount of the Assessments. The amount of the Capital Assessment in the 2003 SAP, which was adopted by and incorporated into Ordinance No. 2003-35, was $11,961,260 and the actual Cost of the Capital Improvements incurred by the Developer through June 30, 2007 was $12,498,265, which increased to $13,349,435 as of June 30, 2010, which additionally increased to $13,894,993 as of June of 2019.

59. The Developer agreed to pay an estimated $256,443 to construct the remaining portion of Bear Hunter Drive, a public street located in the Hunters Crossing PID, bringing the total actual cost to the Developer for Capital Improvements located within the Hunters Crossing PID to at least $14,151,436.

60. The estimated Cost of the Capital Improvements levied in a lump sum assessment in 2003 against the property in the Hunters Crossing PID of $11,961,260 is less than the total actual cost to the Developer for Capital Improvements located within the Hunters Crossing PID.

61. The special benefit received by Commercial Lots, Multi-Family Lots, Single-Family Residential Lots and the Undeveloped Property is greater than the actual Costs of the Authorized Improvements levied as Assessments against the Assessed Property.

62. The 2019 SAP clarified and extended the Annual Installment payment option set forth in the 2003 SAP. The 2003 SAP did not clearly set forth an annual installment plan for the payment of Capital Assessments on Commercial and Multi-Family Property and the Annual Installment plan for the payment of Capital Assessments on Single-Family Residential contained mathematical errors. To the extent that an Annual Installment payment option is contemplated in the 2003 SAP, it would end in 2027. Any remaining amounts owed by property owners in the Hunters Crossing PID for their apportioned Capital Assessment at that time, based on square footage, or by lot, as applicable, would be due and payable in full in 2028 under the 2003 SAP.

63. The 2019 SAP clarifies that a property owner's option to pay apportioned Capital Assessments by Annual Installment applies to Commercial, Multi-Family and Single-Family Residential properties. The 2019 SAP extends the option of each owner to pay the Annual Installment for each property classification as follows: if not already paid in full, Commercial Assessments collected as Annual Installments continue until the amount of the Commercial Assessment is paid in full or through January 31, 2034; if not already paid in full, the Multi-Family and Undeveloped Lot Assessments collected as Annual Installments continue until the amount of the Multi-Family and Undeveloped Lot

Assessment is paid in full or through January 31, 2041; and, if not already paid in full, the Single-Family Assessments collected as Annual Installments continue until the amount of the Single-Family Assessment is paid in full or through January 31, 2030.

64. The 2019 SAP provides that after these dates, any unpaid portion of an Assessment, which is not delinquent, shall be reduced to zero and all liens related to any unpaid Assessment shall be released.

65. The 2019 SAP contains an Assessment Roll, attached as Exhibit F thereto and incorporated for all purposes. The Assessment Roll reflects, as of the date of the passage of Ordinance No. 2019-40, the outstanding, unpaid Capital Assessment on a parcel-by-parcel basis owed by each property owner in the Hunters Crossing PID and accurately reflects amounts previously paid by each property owner and credited to the applicable parcel. The unpaid Capital Assessment attributable to each parcel was calculated by the City by consulting County of Bastrop Tax Assessor and Collector records reflecting past assessment payments made by property owners within the Hunters Crossing PID and correlating those payments to the correct parcel so that unpaid Capital Assessment could be correctly calculated for each parcel. A reconciliation of these past payments was performed by the City's Chief Financial Officer/Hunters Crossing LGC's Staff Liaison, which serves as the basis to calculate remaining unpaid capital assessment for each parcel, a true and correct copy of which was admitted into evidence for all purposes.

66. The 2019 SAP reflects that the City Council of Bastrop approved, confirmed and ratified in all respects the prior actions taken by the City Council relating to the creation of the PID, the approval of the original 2003 SAP and the levy of assessments within the PID.

67. On September 24, 2019, in a duly noticed public meeting, the City Council of Bastrop adopted Resolution R-2019-86, which included the Amended and Restated Public Improvement District Development and Reimbursement Agreement, attached thereto as Exhibit A, a true and correct copy of which was admitted into evidence for all purposes.

68. Exhibit A to Resolution R-2019-86 provides that the Developer is entitled to a maximum capital reimbursement amount of $11,961,260 pursuant to the 2003 and 2019 reimbursement agreements. Exhibit A to Resolution R-2019-86 provides that the allocation of PID payments to the Developer shall be applied only to the allocated unpaid principal and all previously accrued interest, if any, shall be waived and cancelled so long as no owner challenges the allocation of PID assessments and provided reimbursement amounts are consistent with the Reimbursement Agreement.

69. Exhibit A to Resolution R-2019-86 provides that as of the date of adoption by the City, the Developer had been paid $2,205,097.71 from assessment Revenue. Exhibit A to Resolution R-2019-86 provides that the Developer is owed $9,756,162.29, but that the Reimbursement Agreement Balance is further reduced by the 2019 Assessment Roll to an amount equal to $7,376,072.02, which is the amount of all unpaid but levied capital assessments to be collected by the City and paid to the Developer.

70. Pursuant to the 2019 SAP, as adopted and approved by Ordinance No. 2019-40, owners of Assessed Property who claim an error in calculating their assessment are required to send written notice of protest within thirty days of the Assessment Roll and Annual Installments being made available for public inspection by the City Secretary.

71. The City Secretary received no challenges claiming an error in calculating an assessment from any property owner in the Hunters Crossing PID within thirty days after the

Assessment Roll and Annual Installments were made available for public inspection by the City Secretary.

72. On or about December 23, 2015, Plaintiff Lirtex Properties, LLC acquired property located in the Hunters Crossing PID by Special Warranty Deed from THAT DALH – Bastrop LP, a true and correct copy of which was admitted into evidence for all purposes.

73. The Special Warranty Deed to Lirtex Properties, LLC provides in exceptions to the Deed that the property was conveyed subject to the rights of the Hunters Crossing Public Improvement District to levy taxes and issue bonds, as recorded in Plat Cabinet No. 5, Page 90A, Plat Records of Bastrop County.

74. On or about November 18, 2017, Plaintiff The Village at Hunters Crossing, LLC acquired property located in the Hunters Crossing PID by Special Warranty Deed from Howard Schain, a true and correct copy of which was admitted into evidence for all purposes. On or about May 19, 2015, Howard Schain acquired property located in the Hunters Crossing PID by Special Warranty Deed from Forestar (USA) Real Estate Group, Inc., a true and correct copy of which was admitted into evidence for all purposes.

75. The Special Warranty Deed to Howard Schain provides in exceptions to the Deed that the property was conveyed subject to the rights of the Hunters Crossing Public Improvement District to levy taxes and issue bonds. The Special Warranty Deed to Plaintiff The Village at Hunters Crossing, LLC conveyed the property subject to the exceptions to conveyance by, through or under Grantor, Howard Schain.

76. Plaintiff Carolyn Smith is a representative of the Smith Family Revocable Trust. On or about December 2, 2014, Carolyn S. Smith and Raymond L. Smith, trustees of the Smith Revocable Trust conveyed property located in the Hunters Crossing PID by Deed Without

Warranty to Carolyn S. Smith and Raymond L. Smith, trustees of the Smith Family Revocable Trust, a true and correct copy of which was admitted into evidence for all purposes. On or about July 30, 2004, Lennar Homes of Texas Sales and Marketing, Ltd. conveyed property located in the Hunters Crossing PID by Special Warranty Deed to Smith Revocable Trust, a true and correct copy of which was admitted into evidence for all purposes. The Single-Family Residential property owned by the Smith Family Revocable Trust is depicted in the Hunters Crossing Section Three B Final Plat, a true and correct copy of which was admitted into evidence for all purposes. The Hunters Crossing Section Three B Final Plat is filed of record in the County Records of Bastrop County as of April 13, 2004.

77. The Hunters Crossing Section Three B Final Plat provides that lots in the plat are within the Hunters Crossing Public Improvement District and are subject to PID assessments and that the PID is responsible for maintenance of collector street right of way landscaping, parkland and trail maintenance, landscaping and drainage right-of-way.

78. Plaintiffs Lirtex Properties, LLC, The Village at Hunters Crossing, LLC and Carolyn Smith, individually and as trustee for the Smith Family Revocable Trust, took title to their respective properties with actual or constructive knowledge that Bastrop had the authority to levy, and in fact had levied, assessments against their respective properties within the Hunters Crossing PID and such assessments are less than or equal to the special benefit received by each property from PID Capital Improvements constructed and paid for by the Developer.

79. The properties owned by Plaintiffs Lirtex Properties, LLC, The Village at Hunters Crossing, LLC and Carolyn Smith, individually and as trustee for the Smith Family

Revocable Trust, which are located within the Hunters Crossing PID have received and continue to receive a direct, special benefit from the PID Capital Improvements financed with the PID assessments levied in 2003.

80. Ordinance No. 2019-40 did not levy an additional Capital Assessment or increase the Capital Assessment originally levied in lump sum to the approximately 283.001 acre property that comprises the Hunters Crossing PID, but rather adopted and ratified the original lump sum Capital Assessment levied by Ordinance No. 2003-35 in the amount of approximately $11.962 Million.

81. Ordinance No. 2019-40 apportioned the lump sum Capital Assessment to individual parcels located within the Hunters Crossing PID based on the special benefit received by each parcel, as calculated by the square footage of Commercial and Multi-Family parcels and per-lot for Single-Family Residential parcels.

82. Ordinance No. 2019-40 contains an Assessment Roll, which accurately reflects the apportioned, outstanding, unpaid Capital Assessment attributable to each parcel as of September 24, 2019, the date on which Ordinance No. 2019-40 was adopted and approved by the City of Bastrop.

83. Resolution R-2019-86 entitles the Developer, TF Hunters Crossing, LP, to a maximum capital reimbursement amount of $11,961,260 pursuant to the 2003 and 2019 reimbursement agreements. The 2019 Reimbursement Agreement waives and cancels accrued interest so long as no owner challenges the allocation of PID assessments and provided reimbursement amounts are consistent with the Reimbursement Agreement.

84. Though actual Capital Improvement costs in the Hunters Crossing PID exceed the amount of the Capital Assessment levied in lump sum by Ordinance No. 2003-35, Ordinance No.

2019-40 does not increase or alter the Capital Assessment levied in lump sum by Ordinance No. 2003-35. Ordinance No. 2019-40 apportions the Capital Assessment levied in lump sum on the basis of actual square footage of actual Commercial and Multi-Family parcels and on a per-lot basis for Single-Family Residential parcels.

85. Ordinance No. 2019-40 was finally adopted on second reading by the City of Bastrop following public notice of a meeting of the City Council that adequately described the action under consideration by the City related to the consideration and approval of Ordinance No. 2019-40, which was posted at least 72 hours prior to the meetings at which Ordinance No. 2019-40 was considered and approved.

86. Ordinance No. 2019-40 was finally adopted on second reading by the City of Bastrop following public hearings that occurred on September 10, 2019 and September 24, 2019, respectively, which were advertised in the *Bastrop Advertiser*, a newspaper of general circulation in Bastrop County, on August 31, 2019 and September 12, 2019, respectively, which adequately described the action under consideration by the City related to the consideration and approval of Ordinance No. 2019-40, which were advertised at least two weeks prior to the meetings at which Ordinance No. 2019-40 was considered and approved.

87. Members of the public, including Plaintiffs, had actual and/or constructive notice of the action under consideration by the City of Bastrop related to the consideration and adoption of Ordinance No. 2019-40 prior to its adoption by the City.

88. Members of the public, including Plaintiffs, were afforded two opportunities to be heard and voice objections to Ordinance No. 2019-40 prior to its final adoption at public hearings that occurred on September 10, 2019 and September 24, 2019, respectively.

89. Ordinance No. 2019-40 does not charge interest on optional installment payments, but instead limits the unpaid Capital Assessment to actual costs, which Capital Assessment was apportioned on a parcel-by-parcel basis based on the special benefit received by each parcel, calculated on a square footage basis for Commercial and Multi-Family parcels and on a per-lot basis for Single-Family Residential parcels.

90. The City of Bastrop properly applied credits, that is, amounts previously paid by property owners, against the apportioned Capital Assessment applicable to each parcel and the Assessment Roll, which is part of Ordinance No. 2019-40 properly reflects the remaining amount of the apportioned Capital Assessment applicable to each parcel as of the date of the adoption of the Ordinance.

91. Ordinance No. 2019-40 permits property owners within the Hunters Crossing PID to pay off their parcel's outstanding apportioned Capital Assessment in full at the owner's option at any time. Upon paying off a parcel's outstanding apportioned Capital Assessment, and any applicable fees authorized by statute, a property owner is entitled to obtain a full release of the lien on the parcel executed by the City pursuant to the terms of Ordinance No. 2019-40.

92. Since the passage of Ordinance No. 2019-40, no Plaintiff has tendered to the City their respective parcel's outstanding apportioned Capital Assessment in full, thereby entitling that Plaintiff to a full release of the lien executed by the City on their respective parcel that is located within the Hunters Crossing PID.

93. Ordinance No. 2019-40 did not "reassess" or levy a "new assessment" against the Hunters Crossing PID, or any parcel located therein.

94. Ordinance No. 2019-40 does not retroactively change a sum due for services already performed by a City or its agent related to the amount of the Assessments. Rather, Ordinance No. 2019-40 apportions Capital Assessment levied in lump sum in 2003 on the basis of the special benefit received by each property based on its land-use classification.

95. Ordinance No. 2019-40 does not attempt to levy a new assessment by retroactively imposing higher costs and interest on Hunters Crossing PID property owners.

96. Ordinance No. 2019-40 does not increase the amount due from all property owners related to the Capital Assessment by $2,596,197.

97. Ordinance No. 2019-40 does not require any property owner in the Hunters Crossing PID to pay any part of their apportioned Capital Assessment that was levied in lump sum in 2003 more than once.

98. TF Hunters Crossing, LP ("TFHC") is a Delaware limited partnership formed on January 18, 2018.  As such, it did not have any communications with or make any misstatement of existing fact to any of the Plaintiffs at or before the time they acquired their respective properties in the Hunters Crossing Public Improvement District.

99. TFHC did not make any misstatement of existing fact to any of the Plaintiffs prior to the City of Bastrop's enactment of Ordinance No. 2019-40 and the 2019 Amended and Restated Service and Assessment Plan for the Hunters Crossing Public Improvement District.

100. In 2018 and 2019, through communications and negotiations with officials and counsel for the City of Bastrop, TFHC engaged in an effort to persuade the City of Bastrop to promulgate Ordinance No. 2019-40 and the 2019 Amended and Restated Service and Assessment Plan.

## II.  Conclusions of Law

101.     Plaintiffs Carolyn Smith, individually or as representative of the Smith Family Revocable Trust, The Village at Hunters Crossing, LLC and Lirtex Properties, LLC filed their Verified Original Complaint on October 28, 2019. Complaints regarding acts or omissions by the City of Bastrop related to the failure of the City to review and update a service and assessment plan for the Hunters Crossing PID prior to October 28, 2017 do not state a cognizable claim for which relief can be granted pursuant to procedural or substantive due process claims brought under 42. U.S.C. §1983 because they occurred more than two-years prior to the date on which Plaintiffs filed their Original Complaint.

102.     Resolution R-2001-19, Resolution R-2003-34, Ordinance No. 2003-35, and Ordinance No. 2004-42, and all attachments and exhibits thereto, were properly adopted by the City of Bastrop pursuant to the lawful authority set forth in Chapter 372 of the Texas Local Government Code and were not void at the time of their adoption. The third anniversary of the effective date of these Resolutions and Ordinances expired and no lawsuit to annul or invalidate these acts, or the proceedings at which they were adopted, was filed. Therefore, Resolution R-2001-19, Resolution R-2003-34, Ordinance No. 2003-35, and Ordinance No. 2004-42, and all attachments and exhibits thereto, are conclusively presumed valid and were adopted in compliance with all applicable requirements set forth in Chapter 372 of the Texas Local Government Code in effect at the time of their adoption.

103.     In Resolutions R-2001-19 and R-2003-34, the City Council, acting in its legislative capacity, made a policy determination that certain infrastructure improvements described therein were advisable and would confer special benefits to the property that was proposed

to comprise the Hunters Crossing PID. The provision of infrastructure improvements to undeveloped property, as set forth in Resolutions R-2001-19 and R-2003-34, is rationally related to a legitimate governmental goal, the reasonable application of which is not objectively arbitrary or irrational.

104.    Acting in its legislative capacity, the City of Bastrop adopted Ordinance No. 2003-35, which created the Hunters Crossing PID and adopted the 2003 SAP, which levied a Capital Assessment in lump sum on approximately 283.001 acres of property in the amount of approximately $11.962 Million, which was based on engineers' estimates of costs of construction of infrastructure related to Commercial, Multi-Family and Single-Family Residential land-uses in the property that comprises the Hunters Crossing PID, and which was adopted pursuant to all applicable requirements set forth in Chapter 372 of the Texas Local Government Code in effect at the time of its adoption. The provision of the proposed infrastructure improvements to undeveloped property and the lump sum Capital Assessment in the amount of $11.962 Million, which was based on engineers' estimates of costs, is reasonable, rationally related to a legitimate governmental goal and is not objectively arbitrary or irrational.

105.    The method for apportioning the Capital Assessment that was levied in lump sum on approximately 283.001 acres of property in the Hunters Crossing PID and amount attributable to each land-use classification for the purpose of calculating an apportioned Capital Assessment, as set forth in Ordinance No. 2003-35, which are based on the special benefit received by each parcel and are calculated on the basis of square footage for Commercial and Multi-Family parcels and per-lot for Single-Family Residential parcels is

reasonable, rationally related to a legitimate governmental goal and is not objectively arbitrary or irrational.

106.      Ordinance No. 2003-35 does not finally apportion the Capital Assessment levied in lump sum on approximately 283.001 acres of property in the Hunters Crossing PID because the property had not been developed and most individual parcels had not been subdivided at the time of its adoption so that a parcel's apportioned Capital Assessment could not be finally calculated on the basis of square footage or per-lot, as applicable, until such final, approved subdivision occurred. Ordinance No. 2003-35's failure to finally apportion the Capital Assessment levied in lump sum on approximately 283.001 acres of property in the Hunters Crossing PID is reasonable and rationally related to a legitimate governmental goal of accurately apportioning the Capital Assessment on the basis of the special benefit received by each parcel relative to its final square footage or the number of lots, as applicable, and is not objectively arbitrary or irrational.

107.      Acting in its legislative capacity, the City of Bastrop adopted Ordinance No. 2004-42 prior to any PID assessments being paid to the City, which corrected scrivener's and mathematical errors, which was reasonable and rationally related to a legitimate governmental interest of accurately levying the Capital Assessment on the basis of the special benefit received by each parcel relative to its final square footage or the number of lots, as applicable, and is not objectively arbitrary or irrational.

108.      Acting in its legislative capacity, the City of Bastrop entered into the 2004 Reimbursement Agreement with the Developer related to the reimbursement of costs incurred by the Developer for the planning, constructing, and financing on behalf of the PID Capital Improvements described in the 2003 SAP, subject to the review and approval

of such plans by the City, pursuant to and authorized by Chapter 372 of the Texas Local Government Code. The terms and conditions contained therein are reasonable and rationally related to the legitimate governmental interest of funding infrastructure improvements for the purpose of fostering development and are not objectively arbitrary or irrational.

109.     Acting in its legislative capacity, the City of Bastrop adopted Ordinance No. 2017-26, which approved and updated the service plan related to Assessments for the Hunters Crossing PID and approved the Fiscal Year 2018 Assessment Roll for the Hunters Crossing PID, which was reasonable and rationally related to the legitimate governmental interest of compliance with Chapter 372 of the Texas Local Government Code regarding annual review of service plans and is not objectively arbitrary or irrational, and which was adopted pursuant to all applicable requirements set forth in Chapter 372 of the Texas Local Government Code in effect at the time of its adoption.

110.     Acting in its legislative capacity, the City of Bastrop adopted Ordinance No. 2018-24, which approved and updated the service plan related to Assessments for the Hunters Crossing PID and approved the Fiscal year 2019 Assessment Roll for the Hunters Crossing PID, which was reasonable and rationally related to the legitimate governmental interest of compliance with Chapter 372 of the Texas Local Government Code regarding annual review of service plans and is not objectively arbitrary or irrational, and which was adopted pursuant to all applicable requirements set forth in Chapter 372 of the Texas Local Government Code in effect at the time of its adoption.

111.     Acting in its legislative capacity, the City of Bastrop adopted Ordinance No. 2019-40, which approved a 2019 Amended SAP, approved the Fiscal Year 2020 Budget and

Assessment Roll, apportioned the Capital Assessment levied in lump sum by Ordinance No. 2003-35, ratified and confirmed all prior actions of the City Council of Bastrop related to the District, confirmed actual costs of PID Capital Improvements, credited past payments made towards the Capital Assessment on a parcel-by-parcel basis, provided for the owner's option to either pay in lump sum or pay in annual instalments the Capital Assessments on a parcel-by-parcel basis and made findings of special benefits received by properties on a parcel-by-parcel basis based on the actual costs of the PID Capital Improvements and the classified land-use as measured by a square-foot or per-lot basis, as applicable, which is reasonable and rationally related to the legitimate governmental interest of compliance with Chapter 372 of the Texas Local Government Code regarding operation of PIDs and is not objectively arbitrary or irrational, and which was adopted pursuant to all applicable requirements set forth in Chapter 372 of the Texas Local Government Code in effect at the time of its adoption.

112.    Ordinance No. 2019-40 did not increase, alter, amend, re-assess or otherwise change the amount of the Capital Assessment levied in lump sum on approximately 283.001 acres in Hunters Crossing PID in the amount of approximately $11.962 Million.

113.    The allocation of the Capital Assessment levied in lump sum on approximately 283.001 acres in the Hunters Crossing PID by Ordinance No. 2019-40 on the basis of special benefits received by properties on a parcel-by-parcel basis as set forth in the Assessment Roll attached thereto is reasonable and rationally related to the legitimate governmental interest of financing infrastructure improvements as allowed under Chapter 372 of the Texas Local Government Code and is not objectively arbitrary or irrational.

114.     The option to make installment payments over an extended period of time that may be made by property owners in the Hunters Crossing PID towards each parcel's apportioned share of the Capital Assessment, as set forth in Ordinance No. 2019-40, does not increase the amount of the Capital Assessment attributable to each parcel and is reasonable and rationally related to the legitimate governmental interests of financing infrastructure improvements as allowed under Chapter 372 of the Texas Local Government Code and providing property owners the option to make installment payments in lieu of a larger single lump sum payment of the apportioned amount of each parcel's share of the Capital Assessment, and is not objectively arbitrary or irrational.

115.     Ordinance No. 2019-40, which accurately reflects each parcel's remaining obligation related to its apportioned share of the Capital Assessment, accurately credited past payments attributable to each parcel, which is reasonable and rationally related to the legitimate governmental interest of financing infrastructure improvements as allowed under Chapter 372 of the Texas Local Government Code and is not objectively arbitrary or irrational.

116.     Ordinance No. 2019-40, afforded property owners the ability to challenge alleged errors in calculating the amount of Capital Assessment reflected as outstanding per parcel in the Assessment Roll, which is reasonable and rationally related to the legitimate governmental interest of financing infrastructure improvements as allowed under Chapter 372 of the Texas Local Government Code and is not objectively arbitrary or irrational.

117.     Ordinance No. 2019-40 was adopted in conformity with all requirements set forth in Chapter 372 of the Texas Local Government Code and represents a reasonable exercise of a local government's legislative power and is rationally related to the legitimate

governmental interest of financing infrastructure improvements as allowed under Chapter 372 and is not objectively arbitrary or irrational.

118.     Acting in its legislative capacity, the City adopted Resolution R-2019-86, which sets forth the terms under which the Developer is to be reimbursed for the outstanding Capital Assessment as it has been apportioned on a parcel-by-parcel basis in Ordinance No. 2019-40. The terms and conditions of Resolution R-2019-86 are reasonable and rationally related to the legitimate governmental interest of financing infrastructure improvements as allowed under Chapter 372 of the Texas Local Government Code and are not objectively arbitrary or irrational.

119.     Plaintiffs have not met their burden to negate every conceivable basis that might support the City's adoption of Ordinance No. 2019-40 and Resolution R-2019-86.

120.     The City of Bastrop possessed a reasonable factual basis for the adoption of Ordinance No. 2019-40 and Resolution R-2019-86.

121.     Neither Ordinance No. 2019-40 nor Resolution R-2019-86 is arbitrary or capricious and neither violates applicable state law.

122.     Plaintiffs had notice of the City's decision to consider Ordinance No. 2019-40 and Resolution R-2019-86 prior to their adoption and also had a meaningful opportunity to be heard prior to their adoption.

123.     Plaintiffs did not suffer monetary damages as a result of the adoption of Ordinance No. 2019-40 or Resolution R-2019-86.

124.     Plaintiffs did not suffer monetary damages as a result of the adoption of Ordinance No. 2003-35 or Resolution R-2019-86.

125.     Plaintiffs received a special benefit from the PID Capital Improvements that exceeded the amount of the PID Capital Assessment levied by Ordinance No. 2003-35 and allocated to each Plaintiff's parcel by Ordinance No. 2019-40.

126.     The share of the PID Capital Assessment levied by Ordinance No. 2003-35 and allocated to each Plaintiff's parcel by Ordinance No. 2019-40 is a lien against the benefitted property until paid.

127.     Plaintiffs are not prevailing parties under 42 U.S.C. §1983.

128.     Plaintiffs are not entitled to attorney's fees under 42 U.S.C. §1988 or any other state or federal statute.

129.     Defendants CONNIE SCHROEDER, WILLIE LEWIS "BILL" PETERSON, DRUSILLA ROGERS, LYLE NELSON, BILL ENNIS, and DOCK JACKSON, each in his or her official capacity as a member of the City Council of the City of Bastrop, Texas, DRUSILLA ROGERS, RICK WOMBLE, MICHELLE DODSON, LYLE NELSON and TABITHA PUCEK, and LYNDA HUMBLE, TREY JOB and PAUL HOFMANN, in their respective official capacities did not act beyond the scope of their authority under state or local law in enacting or enforcing Ordinance No. 2019-40 or Resolution R-2019-86.

130.     When it adopted Ordinance No. 2019-40 and Resolution R-2019-86, the City of Bastrop complied with Chapter 311 of the Texas Government Code in that the Ordinance and Resolution are in compliance with the constitution of the State and the United States, the Ordinance and Resolution were intended by the City to be effective in their entirety, the City intended a just and reasonable result, the City intended a result feasible of execution, and the City intended that the public interest would be favored over any private interest.

131.     Enforcing the plain terms of Ordinance No. 2019-40 and Resolution R-2019-86 does not render an absurd result.

132.     There is no evidence that TFHC made any misstatement of fact to Plaintiffs, so Plaintiffs have not met their burden of proof in support of their claim against TFHC for negligent misrepresentation.

133.     There is no evidence that any of the Plaintiffs relied upon any misstatement of fact made to them by TFHC, so Plaintiffs have not met their burden of proof in support of their claim against TFHC for negligent misrepresentation.

134.     TFHC did not owe Plaintiffs a duty to disclose that supports a negligent misrepresentation claim.

135.     Under the *Noerr-Pennington* doctrine, TFHC is immune to Plaintiffs' civil conspiracy claims, and the "sham" exception to this doctrine is unavailable because TFHC achieved its intended result with the passage of the Ordinance No. 2019-40 and the 2019 Amended and Restated Service and Assessment Plan, so there is no evidence that TFHC's lobby efforts with the City of Bastrop were objectively baseless.

136.     Plaintiffs have not met their burden of proof on any claim asserted in their live pleading and Defendants are entitled to judgment as a matter of law.

137.     Any Finding of Fact that constitutes a Conclusion of Law is so designated and any Conclusion of Law that constitutes a Finding of Fact is so designated.

Respectfully submitted:

**RUSSELL RODRIGUEZ HYDE BULLOCK, LLP**
1633 Williams Drive, Bldg. 2, Suite 200
Georgetown, Texas 78628
512-930-1317 (ph)
866-929-1641 (fax)
ghyde@txlocalgovlaw.com
bbullock@txlocalgovlaw.com

By: */s/ Bradford E. Bullock*
GEORGE E. HYDE
State Bar No. 45006157
BRADFORD E. BULLOCK
State Bar No. 00793423

**ATTORNEYS FOR THE CITY OF BASTROP, TEXAS; CONNIE SCHROEDER; WILLE LEWIS "BILL" PETERSON; DRUSILLA ROGERS; LYLE NELSON; BILL ENNIS; DOCK JACKSON; RICK WOMBLE; MICHELLE DODSON; AND TABITHA PUCEK**

*/s/ Jeffrey J. Hobbs, with permission*
Michael J. Whellan
mwhellan@abaustin.com
Jeffrey J. Hobbs
State Bar No. 24012837
jhobbs@abaustin.com
Armbrust & Brown, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas 78701
(512) 435-2300 – telephone
(512) 435-2360 – facsimile

**ATTORNEYS FOR DEFENDANT**
**TF HUNTERS CROSSING, L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served according to the Federal Rules of Civil Procedure on all parties of record via email on April 21, 2021.


Richard D. Milvenan
McGinnis Lochridge LLP
600 Congress Ave., Ste. 2100
Austin, TX 78701
rwhite@mcginnislaw.com
eranis@mcginnislaw.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Bradford E. Bullock*
BRADFORD E. BULLOCK

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAROLYN SMITH, *et al.*, | § | |
|     *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 1:19-cv-01054-RP |
| | § | |
| THE CITY OF BASTROP, TEXAS, et al., | § | |
|     *Defendants.* | § | |

**DEFENDANTS' ESTIMATE OF PROBABLE LENGTH OF TRIAL**

Defendants jointly estimate that the nonjury trial of this natter will last no more than three

days.

Respectfully submitted,


*/s/ Jeff Hobbs*                       */s/ Bradford E. Bullock*
**MICHAEL J. WHELLAN**           **GEORGE E. HYDE**
State Bar No. 21265550           State Bar No 45006157
mwhellan@abaustin.com          ghyde@txlocalgovlaw.com
**JEFFREY J. HOBBS**                **BRADFORD E. BULLOCK**
State Bar No. 24012837           State Bar No. 00793423
jhobbs@abaustin.com            bbullock@txlocalgovlaw.com
**ARMBRUST & BROWN, PLLC**    **RUSSELL RODRIGUEZ HYDE**
100 Congress Avenue, Suite 1300    **BULLOCK, LLP**
Austin, Texas  78701              1633 Williams Drive, Building 2, Suite 200
(512) 435-2300 – telephone      Georgetown, Texas 78628
(512) 435-2360 – facsimile       (512) 930-1317 – telephone
**ATTORNEYS FOR DEFENDANT**  (866) 929-1641 – facsimile
**TF HUNTERS CROSSING, L.P.**   **ATTORNEYS FOR THE CITY OF**
                                    **BASTROP, TEXAS, CONNIE**
                                    **SCHROEDER, WILLIE LEWIS**
                                    **"BILL" PETERSON, DRUSILLA**
                                    **ROGERS, LYLE NELSON, BILL**
                                    **ENNIS, DOCK JACKSON, RICK**
                                    **WOMBLE, MICHELLE DODSON,**
                                    **AND TABITHA PUCEK**

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2021 the above and foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and electronic mail.

Rick Milvenan
Ian Davis
McGinnis Lochridge LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
rmilvenan@mcginnislaw.com
edavis@mcginnislaw.com
(512) 505-6331 - fax


_____/s/ Jeff Hobbs_____
Jeff Hobbs