# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| CAROLYN SMITH, THE VILLAGE AT HUNTERS CROSSING, L.L.C. and LIRTEX PROPERTIES, LLC, | § § § § | |
| **Plaintiffs,** | § § § | |
| v. | § § | |
| THE CITY OF BASTROP, TEXAS, CONNIE SCHROEDER, WILLIE LEWIS "BILL" PETERSON, DRUSILLA ROGERS, LYLE NELSON, BILL ENNIS, and DOCK JACKSON, each in his or her official capacity as a member of the City Council of the City of Bastrop, Texas, and LYNDA HUMBLE, DRUSILLA ROGERS, RICK WOMBLE, MICHELLE DODSON, LYLE NELSON AND TABITHA PUCEK, each in his or her official capacity as a Director of Hunters Crossing Local Government Corporation, and TF HUNTERS CROSSING, L.P. as successor-in-interest to FORESTAR (USA) REAL ESTATE GROUP, INC., | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 1:19-cv-01054 |
| **Defendants.** | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL EXHIBITS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT L. PITMAN:

Plaintiffs Carolyn Smith, The Village at Hunters Crossing, L.L.C., and LIRTEX Properties, LLC, (collectively "Plaintiffs") file this Response in Opposition to Defendants' Objections to Plaintiffs' Trial Exhibits, and would respectfully show the Court as follows:

2038915.v1

## I.      INTRODUCTION

1.      In their Objections to Plaintiffs' Trial Exhibits, Defendants ask the Court to exclude a number of proposed exhibits on the grounds that they are irrelevant to resolving Plaintiffs' claims. *See* Dkt. 106.  Defendants' argument, however, is directly contradicted by Texas statutory authority that expressly permits courts to consider extrinsic materials when construing ordinances. Other disputed exhibits are relevant to elements of Plaintiffs' claims that the 2019 Ordinance violates art. I, sec. 16 of the Texas constitution and that Defendant TF Hunters Crossing, LP ("TFHC") is liable for negligent misrepresentation.  For the reasons set forth below, Plaintiffs respectfully request that the Court overrule Defendants' objections to Plaintiffs' Trial Exhibits, and admit these exhibits for use at trial.

## II.      BRIEF SUMMARY OF THE EXHIBITS AT ISSUE

2.      To aid the Court in resolving Defendants' objections, Plaintiffs provide a brief description of the exhibits at issue, and, where necessary, an explanation of the relevant actors associated with the particular exhibit. These exhibits are also attached to this Response.

| EXHIBIT | DESCRIPTION | RELEVANT ACTOR |
|---------|-------------|----------------|
| P-27 | Glass & Company Memo | (i)      **Glass & Company**: Independent accounting firm hired by the Special Legal Counsel to the Defendant City of Bastrop, Texas to analyze the PID |
| P-28 | Emails between George Hyde and Misty Ventura, Dated March 26, 2018 through April 20, 2018 | (i)      **Misty Ventura**: Non-litigation legal counsel to Defendant TF Hunters Crossing, LP (ii)      **George Hyde**: Special Legal Counsel to Defendant City of Bastrop |

| EXHIBIT | DESCRIPTION | RELEVANT ACTOR |
|---|---|---|
| P-32 | Email from George Hyde to Misty Ventura, Dated July 12, 2018 | |
| P-33 | Letter from George Hyde to Robert Reetz, Dated September 19, 2019 | (i)      **Robert Reetz**: Non-litigation counsel to Plaintiffs |
| P-35 | Emails Between Tracy Waldron and Joyce Schanhals, Dated March 6, 2019 and March 7, 2019 | (i)      **Tracy Waldron**: Chief Financial Officer of Defendant City of Bastrop <br> (ii)      **Joyce Schanhals**: Property Tax Administrator for Bastrop County, Texas |
| P-36 | Emails Between Tracy Waldron and Jean Riemenschneider, Dated June 23, 2017 through June 26, 2017 | (i)      **Jean Riemenschneider**: Economic Development Project Manager for Defendant City of Bastrop's Economic Development Corporation |
| P-37 | Letter and Invoice Sent from Tracy Waldron to MacDonald & Associates, Inc., Dated June 9, 2017 | (i)      **MacDonald & Associates, Inc.**: owner of multifamily property within the PID |
| P-38 | Emails Between Misty Ventura and MacDonald & Associates, Inc., Dated March 27, 2018 through March 28, 2018 | |
| P-39 | 2013 Question and Answer by City Council Member Ken Kesselus | (i)      **Ken Kesselus**: Former member of the Bastrop City Council and Hunters Crossing Local Government Corporation ("HCLGC") Board of Directors |
| P-44 | Emails between Misty Ventura and George Hyde, Dated March 26, 2018 through May 15, 2018 | |
| P-45 | Emails between Misty Ventura and Robert Reetz, | |

| Exhibit | Description | Relevant Actor |
|---|---|---|
|  | Dated February 23, 2018 through May 16, 2018 |  |
| P-46 | Emails between Misty Ventura and George Hyde, Dated September 9, 2018 through September 10, 2018 |  |
| P-47 | Emails Between Misty Ventura and George Hyde, Dated September 9, 2018 through September 10, 2018 |  |
| P-48 | Email from George Hyde to Misty Ventura, Dated February 1, 2019 |  |
| P-49 | Emails between George Hyde and Misty Ventura, Dated February 5, 2019 |  |
| P-50 | Emails between Misty Ventura, George Hyde, Tracy Waldron, and Roxanne Sheehan, Dated September 4, 2019 through September 6, 2019 | (i)      **Roxanne Sheehan**: Non-litigation counsel for Defendant TF Hunters Crossing, LP |
| P-51 | Letter from Robert Reetz to Tracy Waldron, Dated September 18, 2019 |  |
| P-52 | Letter from Robert Reetz to Lynda Humble and Connie Schroeder, Dated October 23, 2019 | (i)      **Lynda Humble**: Former City Manager for Defendant City of Bastrop (ii)     **Connie Schroeder**: Mayor of City of Bastrop |
| P-53 | Email from George Hyde to Robert Reetz, Dated October 25, 2019 |  |
| P-54 | Emails between George Hyde and Raymond White, Dated October 30, 2019 to October 31, 2019 | (i)      **Raymond White**: Former litigation counsel for Plaintiffs |
| P-60 | Letter from George Hyde to Misty Ventura, Dated August 6, 2018 |  |

2038915.v1

| EXHIBIT | DESCRIPTION | RELEVANT ACTOR |
|---|---|---|
| P-62 | Emails between George Hyde and Misty Ventura, Dated July 23, 2019 through July 31, 2019 | |
| P-63 | Emails between George Hyde, Misty Ventura, Roxanne Sheehan and Larry Dodson, Dated July 31, 2019 | (i) **Larry Dodson**: Accountant for Glass & Company |
| P-64 | Declaration of Robert Reetz, Dated October 9, 2020 | |
| P-65 | Declaration of Robert Reetz, Dated November 9, 2020 | |
| P-74 | Emails between George Hyde, Misty Ventura, Roxanne Sheehan, and Tracy Waldron, Dated February 6, 2019 | |
| P-75 | Emails between George Hyde and Robert Reetz, Dated July 2, 2019 through July 3, 2019 | |

## III.    ARGUMENTS AND AUTHORITIES

3.      In the Fifth Circuit, "[s]trict evidentiary rules of admissibility are generally relaxed in bench trials, as appellate courts assume that trial judges rely upon properly admitted and relevant evidence." *Null v. Wainwright*, 508 F.2d 340, 344 (5th Cir. 1975). For this reason, "the district court is entitled to greater latitude in evidentiary rulings[.]" *Moorhead v. Mitsubishi Aircraft Int'l, Inc.,* 828 F.2d 278, 287 (5th Cir. 1987).

**A.  Plaintiffs' Exhibits P-27, P-28, P-32, P-39, P-44, P-46, P-47, P-48, P-49, P-50, P-60, P-62, P-63, and P-74 are Relevant and Admissible to Aid the Court in Construing the Disputed Ordinances**

a. **Texas Law Says the Court May Consider Extrinsic Aids When Construing an Unambiguous Ordinance**

4.     The gravamen of Defendants' Objections is that "[t]he only way the Court could even consider extrinsic evidence to discern legislative intent is by first concluding that the acts being challenged . . . are ambiguous." Dkt. 106 at ¶ 8.  Defendants miss the mark. Texas statutory authority expressly authorizes a court to use extrinsic materials to interpret an ordinance, even when the ordinance at issue is unambiguous.

5.     In the Fifth Circuit, "[s]tate rules of statutory interpretation govern the construction of a city ordinance." *Lamar Tex. LP v. City of Port Isabel*, 2010 U.S. Dist. LEXIS 8881, at *15 (S.D. Tex. Feb. 3, 2010). In Texas, courts construe municipal ordinances according to the same rules of construction that apply to statutes. *See Jones v. City of Palestine*, 266 Fed. Appx. 320, 323 (5th Cir. 2008) (citing *Mills v. Brown*, 316 S.W.2d 720, 723 (Tex. 1958)).

6.     Under TEX. GOV'T CODE § 311.023, courts are expressly permitted to examine extrinsic materials when interpreting unambiguous legislative documents. TEX. GOV'T CODE § 311.023 provides:

> In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:
>
> > (1) object sought to be attained;
> > (2) circumstances under which the statute was enacted; [and]
> > (3) legislative history[.]

TEX. GOV'T CODE § 311.023(1)–(3).

7.     Relatedly, TEX. GOV'T CODE § 312.005 commands: "In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy." TEX. GOV'T CODE § 312.005.

8.     Pursuant to TEX. GOV'T CODE §§ 311.023 and 312.005, the Texas Supreme Court has acknowledged that it is authorized to employ extrinsic aids when interpreting legislative materials, even in the absence of ambiguity:

- *Helena Chem. Co. v. Wilkins*, **47 S.W.3d 486, 493 (Tex. 2001) (citing TEX. GOV'T CODE § 311.023)** ("Even when a statute is not ambiguous on its face, we can consider other factors to determine the Legislature's intent, including: the object sought to be obtained; the circumstances of the statute's enactment; the legislative history; . . . [and]; the consequences of a particular construction.");

- *Phillips v. Beaber*, **995 S.W.2d 655, 658–59 (Tex. 1999) (citing TEX. GOV'T CODE § 311.012(2))** (examining "the legal context in which" a statute was enacted as a tool of statutory construction);

- *Harris County District Attorney's Office v. J.T.S.*, **807 S.W.2d 572, 574 (Tex. 1991) (citing TEX. GOV'T CODE § 311.023)** ("When interpreting a statute, whether or not ambiguous, a court may consider the object sought to be obtained and the legislative history.");

- *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs.*, **236 S.W.3d 190, 194 (Tex. 2007) (quoting TEX. GOV'T CODE § 312.005)** ("The Legislature has directed that '[i]n interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.'").

- *In re John E. Graham & Sons*, **210 F.3d 333, 337-38 (5th Cir. 2000) (**"Under Texas law governing statutory construction, the primary objective of a court is to give effect to the Legislature's intent.  *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). In ascertaining legislative intent, Texas courts would consider the object to attain, the circumstances of the statute's enactment, legislative history, former statutory and common law, and the consequences of a particular construction. TEX. GOV'T CODE § 311.023; *Mitchell Energy*, 943 S.W.2d at 438. The Texas Supreme Court would attempt to give the statute the meaning the Legislature intended, keeping in mind the old law, the evil, and the remedy. *Id*.").

- *Cyr v. SNH NS MTG Props. 2 Tr.*, **No. SA:19-CV-0911-JKP, 2020 U.S. Dist. LEXIS 223498, at \*2 (W.D. Tex. 2020) (quoting Tex. Gov't Code § 311.023(1))** ("The Court is mindful that in construing a Texas statute, 'a court may consider among other matters the: (1) object sought to be attained.'").

9.     In *Brown Outdoor Advert., LLC v. Town of Prosper*, the Dallas Court of Appeals held that, in a dispute involving the construction of a municipal ordinance that prohibited commercial billboards, the trial court did not abuse its discretion by admitting into evidence a

statement of fact and staff report discussing the purpose of the ordinance. *See* Tex. App. LEXIS 3717, at *4–8 (Tex. App.—Dallas May 16, 2005). In so finding, the court held that, under TEX. GOV'T CODE § 311.023, such extrinsic evidence was relevant and admissible for the purpose of interpreting the disputed ordinance. *Id.*

10.     In *Jones v. City of Palestine*, the Fifth Circuit was tasked with interpreting a municipal ordinance regarding wastewater utility rates. *See* 266 Fed. Appx. 320 (5th Cir. 2008). Citing to its authority under TEX. GOV'T CODE § 311.023, the Fifth Circuit gleaned the legislative intent behind the ordinance by examining several extrinsic materials, including a contemporaneously published policy regarding wastewater utilities, the municipality's annual budget, and evidence of the consequences of an alternative interpretation. *See id.* at 323–24.

11.     In resolving the present evidentiary dispute, the Court must begin its analysis with TEX. GOV'T CODE § 312.005, which demands: "In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy." TEX. GOV'T CODE § 312.005.

12.     Here, the face of the 2019 Ordinance provides a cursory mention of the "evil" the City of Bastrop sought to remedy. In relevant part, the 2019 Ordinance provides:

-   "In the Fall of 2017, property owner inquiries regarding the operation of the [Hunters Crossing Public Improvement] District resulted in the Hunters Crossing Local Government Corporation and the new City Council **to engage professionals to examine the state of the District and engage with the original Developer and subsequently the current Developer [TFHC] to reconcile the District operation**." Exhibit P-9 (City of Bastrop Ordinance No. 2019-40), at pg. 9 (emphasis added).

-   "***Municipal records prior to the Fall of 2017 do not demonstrate statutory compliance in the Operation of the District***. Legal counsel for the City, the Hunters Crossing Local Government Corporation and the Developer [TFHC] have found ***several provisions of the existing 2003 [Service and Assessment Plan] unworkable, necessitating this amendment and restatement***." *Id.* at pg. 9–10 (emphasis added).

-   "The Original Developer [Forestar] issued written notice of assignment of the District Development and Reimbursement Agreement to TF Hunters Crossing, LP, the current

Developer in February 2018, ***placing additional complexities into the examination***." *Id.* at pg. 10 (emphasis added).

- "***After months of examination, evaluation, and development of materials to reconcile the District operation***, the preparation of the amended and restated documentation including the Amended and Restated Service and Assessment Plan, ***are necessary to support the continued operation of the District to its conclusion***." *Id.* at pg. 10 (emphasis added).

13.    These recitals show that, through the 2019 Ordinance, the City: (i) intended to amend "unworkable" provisions of the 2003 Ordinance; (ii) attempted to correct the lack of statutory compliance prior to the Fall of 2017; and (iii) intended to "reconcile District operations" with the new developer, TFHC, which were "necessary to support the continued operation of the District to its conclusion." *Id.* at pg. 9–10.

14.    Helpful as these recitals may be in evidencing the overarching purpose and intent behind the 2019 Ordinance, they leave unanswered a number of important questions, such as: (i) which provisions of the 2003 Ordinance were "unworkable?"; (ii) how did the City violate the Public Improvement District and Assessment Act ("PIDA Act") prior to the Fall of 2017?; (iii) in what way did TFHC's involvement place "additional complexities" into the examination of the PID?; (iv) how exactly did the City and TFHC attempt to "reconcile District operations?"; and (v) to what extent is this "reconciliation" reflected in the contents of the 2019 Ordinance?

15.    Many of the exhibits to which Defendants now object are instrumental in answering the above questions, and provide relevant insight into "the object sought to be obtained" through the 2019 Ordinance, and the "circumstances under which the [2019 Ordinance] was enacted[.]" TEX. GOV'T CODE § 311.023(2)–(3). Because the Texas Legislature explicitly authorizes courts construing municipal ordinances to examine such aids, the above-referenced exhibits are relevant and admissible for that purpose.

16.     Broadly speaking, the exhibits that are relevant and admissible as interpretive aids under TEX. GOV'T CODE §§ 311.023 and 312.005 may be categorized as:

(i)     documents created by or for the City of Bastrop for the purpose of interpreting the 2003 Ordinance, identifying the "unworkable" provisions of the 2003 Ordinance, and reconciling PID reimbursements with TFHC in the drafting of the 2019 Ordinance (**Exhibit P-27** – the Glass Memo; and **Exhibit P-39** – 2013 Q&A with City Council Member Ken Kesselus); and

(ii)    communications between legal counsel for Defendant the City of Bastrop and Defendant TFHC that constitute the "reconciliation" referenced in the 2019 Ordinance (**Exhibits P-28; P-32; P-44; P-46; P-47; P-48; P-49; P-50; P-60; P-62; P-63;** and **P-74**).

17.     Both of these categories of exhibits provide relevant insight into "the object sought to be obtained" through the 2019 Ordinance, and the "circumstances under which the [2019 Ordinance] was enacted[.]" TEX. GOV'T CODE § 311.023(2)–(3).

18.     Plaintiffs' Exhibit P-27 is the Glass Memo. The Glass Memo is a financial report that was issued by an independent accounting firm, Glass & Co., on July 20, 2018, roughly a year before the 2019 Ordinance was enacted. The City's special legal counsel, George Hyde, commissioned the Glass Memo as a part of the City's reconciliation of the PID with Defendant TFHC. This reconciliation ended with the enactment of the 2019 Ordinance.

19.     As requested by the City, the Glass Memo had two primary purposes. First, the Glass Memo calculated "the amount of reimbursement of capital costs due to the developer of the Hunters Crossing Public Improvement District" as of July 20, 2018. Second, the Glass Memo "reconciled the developer's [TFHC] analysis of the amounts owed to the developer" (i.e. what TFHC claimed it was owed under the 2003 Ordinance) to the Glass Memo's calculations. In making these calculations, the Glass Memo also made a number of important observations regarding the operation of the PID between 2003 and 2018.

20.     The Glass Memo is relevant and admissible for the purpose of interpreting the 2003 and 2019 Ordinances because it directly evidences the "object sought to be obtained" through the 2019 Ordinance and the "circumstances under which the [2019 Ordinance] was enacted[.]" TEX. GOV'T CODE § 311.023(2)–(3); *see also Jones v. City of Palestine*, 266 Fed. Appx. 320, 323–24 (5th Cir. 2008).  It is undisputed that the 2019 Ordinance was enacted to correct "unworkable" provisions in the 2003 Ordinance. Therefore, interpreting the 2019 Ordinance necessarily requires interpretation of the 2003 Ordinance. Moreover, as this Court has recognized, resolution of Plaintiffs' claims depends, in part, on the amount of capital assessments set forth in the 2003 Ordinance. *See* Dkt. 86 (Report and Recommendation of United States Magistrate); Dkt. 99 (Order Adopting Report and Recommendation). Because the Glass Memo is a report issued by an independent accounting firm at the behest of the City and its special counsel, it is highly relevant in answering this question. The Glass Memo is also relevant in that it will aid the Court in "ascertain[ing] legislative intent" through examination of "the old law, the evil, and the remedy." TEX. GOV'T CODE § 312.005.

21.     Plaintiffs' Exhibit P-39 is a document provided by the City to PID property owners in 2013. Specifically, it is a "Question and Answer" in which then-City Council member and HCLGC board member Ken Kesselus provided answers to PID property owners regarding the City's operation of the PID under the 2003 Ordinance. Plaintiffs offer Exhibit P-39 as an interpretative aid that will assist the Court in evaluating the City's statutory non-compliance prior to the enactment of the 2019 Ordinance and the "unworkable" provisions of the 2003 Ordinance. Therefore, because Exhibit P-39 offers the Court additional insight into the "circumstances under which the [2019 Ordinance] was enacted", it is relevant and admissible. TEX. GOV'T CODE § 311.023(2).

2038915.v1

22.     Plaintiffs' Exhibits P-28; P-32; P-44; P-46; P-47; P-48; P-49; P-50; P-60; P-62; P-63; and P-74 are emails and letters sent between agents of the City and agents of TFHC in the period between February 2018 (when TFHC purchased its interest in the PID) and September 2019 (when the 2019 Ordinance was enacted). These communications are relevant to interpreting the 2019 Ordinance because they evidence "the object sought to be obtained" through the 2019 Ordinance, and the "circumstances under which the [2019 Ordinance] was enacted[.]" TEX. GOV'T CODE § 311.023(2)–(3).

23.     Specifically, these communications constitute the "months of examination, evaluation, and development of materials to reconcile the District operation" that are directly referenced in the 2019 Ordinance. *See* Exhibit P-9 (City of Bastrop Ordinance No. 2019-40), at pg. 10. Through an examination of the discussions between the chief architects of the 2019 Ordinance – the City's special legal counsel, George Hyde, and TFHC's counsel, Misty Ventura – the Court will have direct insight into "the object sought to be obtained" through the 2019 Ordinance, and the "circumstances under which the [2019 Ordinance] was enacted[.]" TEX. GOV'T CODE § 311.023(2)–(3). Because the Texas Legislature has explicitly authorized courts to use such extrinsic materials when interpreting ordinances, Defendants' objections should be overruled.

**b.  The City's Own Construction, Interpretation, and Implementation of the 2003 Ordinance is Relevant and Admissible at Trial**

24.     A number of Plaintiffs' exhibits are offered to evidence the City's own construction, interpretation and implementation of the 2003 Ordinance. "[W]hen evaluating a facial challenge to an ordinance," courts in the Fifth Circuit "must consider a municipality's 'authoritative constructions of the ordinance, including its own implementation and interpretation of it.'" *Int'l Women's Day March Planning Comm. v. City of San Antonio*, 619 F.3d 346, 357–59 (5th Cir. 2010) (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992)).

25.     In *Int'l Women's Day*, the Fifth Circuit was tasked with determining the facial validity of a municipal ordinance. *See* 619 F.3d 346. In doing so, the court considered evidence of how the city of San Antonio had construed, interpreted, and implemented the ordinance, including a presentation made by city staff to the San Antonio City Council, as well as several spreadsheets that "contain[ed] information regarding the enforcement of the" challenged ordinance. *See id.* at 358–59.

26.     Here, Plaintiffs' Exhibits P-28; P-32; P-36; P-37; P-39; P-44; P-46; P-47; P-48; P-49; P-50; P-60; P-62; P-63; and P-74 are offered to show how the City of Bastrop construed, interpreted, and implemented the 2003 Ordinance when drafting the 2019 Ordinance.

27.     In this case, the Court found that genuine issues of material fact regarding the amount of capital assessments levied under the 2003 Ordinance precluded summary judgment. *See* Dkt. 86; Dkt. 99. The above-referenced exhibits are directly relevant to assisting the Court in making that determination.

28.     Specifically, Plaintiffs' Exhibits P-28; P-32; P-44; P-46; P-47; P-48; P-49; P-50; P-60; P-62; P-63; and P-74 show how the City's special legal counsel and architect of the 2019 Ordinance, George Hyde, interpreted the 2003 Ordinance during his negotiations with TFHC. And as the Court is well aware, proper construction of the 2003 Ordinance is a critical aspect of Plaintiffs' lawsuit.

29.     Furthermore, Exhibits P-36; P-37; and P-39 are offered to show that, prior to the enactment of the 2019 Ordinance, City officials interpreted the 2003 Ordinance as having levied capital assessments against individual parcels in the PID, rather than a single 283-acre parcel. For example, Plaintiffs' Exhibit P-36 is an email thread between Tracy Waldron, the City's Chief Financial Officer, and Jean Riemenschneider, the Economic Development Project Manager of the

Bastrop Economic Development Corporation, dated June 23–26, 2017. This email thread is offered to establish that, in June 2017, Tracy Waldron was able to "calculate what the assessment would be on any parcel [within the PID]." Exhibit P-36. Ms. Waldron's admission, made in her capacity as CFO of the City, evidences how the City interpreted and implemented the 2003 Ordinance, and directly rebuts Defendants' claim that the 2003 Ordinance levied the capital assessments against a single 283-acre parcel. Plaintiffs' Exhibits P-37 (a letter and invoice sent to MacDonald, a non-party PID property owner) and P-39 (the 2013 Kesselus Q&A) are offered to rebut the same point.

30.     Plaintiffs' Exhibit P-36 is also offered to establish that, in June 2017, the City's CFO Tracy Waldron believed that "the PID documents are vague and unclear" and that she was "not sure" how to calculate the remaining amount of assessments on either the entire PID or on any individual parcels. This admission is relevant to Plaintiffs' claim that the 2019 Ordinance is not supported by a rational basis.

### c.   In Like Circumstances, Statements by Governmental Officials Are Relevant to Show Legislative Intent in the Passage of Legislation

31.     Defendants' absolutist view – that a court is *never* permitted to consider statements made by government officials when interpreting constitutionally suspect legislation – is not supported in the case law. Courts in the Fifth Circuit recognize that there are circumstances in which statements made by government officials are relevant to determining whether challenged legislation passes constitutional muster.

32.      For example, in the context of equal protection and due process challenges to state legislation, "[c]ourts in the Fifth Circuit have found that statements by state legislators are relevant to show discriminatory intent in the passage of legislation." *Jackson Mun. Airport Auth. v. Bryant*, 2017 U.S. Dist. LEXIS 208649, at *12 (S.D. Miss. 2017); *see also Hall v. Louisiana*, 2014 U.S. Dist. LEXIS 56165, at *9 (M.D. La. Apr. 23, 2014) (citing *Village of Arlington Heights v. Metro*

*Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977)) ("The legislators argue that the evidence requested is irrelevant to show discriminatory intent. Contrary to the legislators' argument, statements made by members of the lawmaking body are relevant to show discriminatory intent, which may be part of the proof used to establish Plaintiffs' substantive claims."); *Veasey v. Perry*, 2014 U.S. Dist. LEXIS 45935, at *2 (S.D. Tex. Apr. 3, 2014) ("The evidence the United States seeks to compel [from the state legislators] is highly relevant to its claim because it bears directly on whether state legislators, contrary to their public pronouncements, acted with discriminatory intent in enacting SB 14.").

33.     In *Bryant*, the plaintiffs alleged that a state law violated their rights under the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. *Jackson Mun. Airport Auth. v. Bryant*, 2017 U.S. Dist. LEXIS 208649, at *11. Plaintiffs sought discovery of statements made by individual state legislators. *Id.* The court found that such statements were relevant to the plaintiffs' equal protection and due process claims. *Id.* at *12.

34.     In *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n,* the plaintiff challenged the constitutionality of various provisions of the Texas Alcoholic Beverage Code. *See* 2016 U.S. Dist. LEXIS 140450, at *1 (W.D. Tex. Oct. 11, 2016). The plaintiff sought discovery from an intervenor and several non-parties regarding communications to "any Texas government body," which was defined to include the Texas legislature, any members of the Texas legislature, legislative staff members, the Attorney General, the Governor's office, and the Texas Alcoholic Beverage Commission. *Id.* at *4. The movants challenged plaintiff's discovery requests on the grounds that "only public, on-the-record statements of legislators are relevant" and thus "private lobbying conversations with legislators are irrelevant." *Id.* at 5. The court found "many other cases where courts have permitted the discovery of lobbying communications from both parties and non-

parties when a statute's purposes are in issue[.]" *Id.* at *14–15 (citing *Perez v. Perry,* 2014 U.S. Dist. LEXIS 1838, at *2 (W.D. Tex. Jan. 8, 2014)). The court overruled the relevance objections and concluded: "the weight of authority supports the proposition that legislator's statements to lobbyists or constituents are relevant to determining legislative purpose." *Id.* at *15.

35.     Plaintiffs' Exhibits P-28; P-32; P-44; P-46; P-47; P-48; P-49; P-50; P-60; P-62; P-63; and P-74 are statements made by George Hyde, special legal counsel to the City, regarding the intent and purpose behind the 2019 Ordinance. Although intent is not an element of Plaintiffs' constitutional challenge to the 2019 Ordinance, these exhibits are offered to evidence (i) the circumstances leading up to the 2019 Ordinance; (ii) the calculations and numerical inputs that support the 2019 Ordinance; and (iii) the purposes served by the 2019 Ordinance.

36.     In conducting rational basis review, courts in the Fifth Circuit consider whether a plaintiff has "negate[d] a seemingly plausible basis for the law by adducing evidence of irrationality." *St. Jospeh Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013). When doing so, courts analyze the government's rationale "informed by the setting and history of the challenged rule" because "hypothesized ends and means do not include post hoc hypothesized facts." *Id.* Because the disputed exhibits are relevant to the "setting and history" of the 2019 Ordinance and the determination of whether Plaintiffs have negated a purported rational basis, the Court should admit them.

**B. Plaintiffs' Exhibits P-27, P-28, P-32, P-39, P-44, P-46, P-47, P-48, P-49, P-50, P-60, P-62, P-63, and P-74 Are Relevant to Plaintiffs' Claim that the 2019 Ordinance Violates Article I, Section 16 of the Texas Constitution**

37.     In determining whether a retroactive law is prohibited by art. I, sec. 16 of the Texas Constitution, courts consider, among other factors, "the nature and strength of the public interest

served by the statute **as evidenced by the Legislature's factual findings**." *Robinson v. Crown Cork & Seal Co., Inc.,* 335 S.W.3d 126, 145 (Tex. 2010) (emphasis added).

38.     In *Robinson*, the Texas Supreme Court held that Chapter 149 of the Texas Civil Practices and Remedies Code was an unconstitutional retroactive law under art. I, sec. 16 of the Texas constitution because it was ostensibly enacted for the sole benefit of one entity and was not supported by legislative fact findings that supported a public interest. *Id.* at 150. In evaluating the first factor – "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings" – the court carefully examined the legislative record. *Id.* at 145, 149–50. In so doing, the court held: "Accepting the legislative record as indicating the reasons for its actions, we conclude that the public interest served by Chapter 149 is slight." *Id.* at 150; *see also id.* at 149 (concluding that "the legislative record is fairly clear that chapter 149 was enacted to help [the defendant] Crown and no one else"). And in determining whether the challenged law served a public interest, the court considered statements made by at least one individual legislator. *See id.* ("Even the statement by its principal House sponsor fails to show how the legislation serves a substantial public interest").

39.     Similarly, in *Zaatari v. City of Austin*, the Austin Court of Appeals held that a municipal ordinance violated art. I, sec. 16 of the Texas Constitution in part because the city's purported reasons behind the ordinance served a minimal, if any, public interest. *See* 615 S.W.3d 172, 188–90 (Tex. App.—Austin 2019, pet. filed). In evaluating the city's purported public interest, the court weighed the city's stated reasons against the legislative record. *Id.* As a component of the legislative record, the court considered evidence of the city's action regarding the subject of the ordinance (a ban on short-term housing rentals) prior to its enactment. *Id.*

40.     Here, Plaintiffs' Exhibits P-27, P-28, P-32, P-39, P-44, P-46, P-47, P-48, P-49, P-50, P-60, P-62, P-63, and P-74 are relevant to establishing the *Robinson* public interest factor. These exhibits constitute the legislative record supporting the 2019 Ordinance and the City's actions regarding the subject of the 2019 Ordinance prior to its enactment. Although there are no formal legislative or committee reports associated with the City's 2019 Ordinance, the Glass Memo and various communications between the City and TFHC represent the most authoritative insight into the purported purpose sought to be achieved in passing the 2019 Ordinance and whether the "factual findings" *actually* support it. Therefore, these exhibits are relevant in establishing that the 2019 Ordinance served a minimal, if any, public purpose. Accordingly, the Court should overrule Defendants' objections.

### C.  Plaintiffs' Exhibits P-28, P-32, P-33, P-44, P-45, P-46, P-47, P-48, P-49, P-50, P-51, P-52, P-53, P-54, P-60, P-62, P-63, P-74, and P-75 Are Also Relevant to Plaintiffs' Negligent Misrepresentation Claim Against TFHC

41.     Plaintiffs assert a claim for negligent misrepresentation against Defendant TFHC. Under Texas law, the elements of negligent misrepresentation are: "(1) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.'" *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653–54 (Tex. 2018) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1992)).

42.     Plaintiffs' Exhibit P-45 is a thread of emails between Plaintiffs' non-litigation counsel, Robert Reetz, and Defendant TFHC's non-litigation counsel, Misty Ventura. Exhibit P-45 is relevant to Plaintiffs' negligent misrepresentation claim against TFHC because it contains

the representations made by TFHC, through its authorized agent Ms. Ventura, that go to the heart of Plaintiffs' negligent misrepresentation claim. Exhibit P-45 is therefore admissible because it is relevant to Plaintiffs' negligent misrepresentation claim and is not hearsay under Federal Rule of Evidence 801(d)(2)(D). *See United States v. D.K.G. Appaloosas, Inc.*, 630 F. Supp. 1540, 1564 (E.D. Tex. 1986) (citing *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984); FED. R. EVID. 801(d)(2)(D)) ("statements made by an attorney concerning any matter within the scope of his employment are admissible").

43.     Plaintiffs' Exhibits P-28, P-32, P-44, P-46, P-47, P-48, P-49, P-50, P-60, P-62, P-63, and P-74 are also relevant to Plaintiffs' negligent misrepresentation claim. These exhibits are communications either sent to or received by Misty Ventura, legal counsel for Defendant TFHC, concerning the reconciliation between TFHC and the City that ultimately led to the final draft of the 2019 Ordinance. Therefore, these communications are relevant to the third element of Plaintiffs' negligent misrepresentation claim: whether the defendant "exercise[d] reasonable care or competence in obtaining or communicating the information[.]" *JPMorgan Chase Bank*, 546 S.W.3d at 653–54.

44.     Plaintiffs' Exhibits P-33, P-51, P-52, P-53, P-54, and P-75 are also relevant to Plaintiffs' negligent misrepresentation claim. These exhibits are communications (emails and letters) between Plaintiffs' counsel (Robert Reetz and Raymond White[1]), and City employees, officials, or agents. These exhibits are offered to show that, in the year prior to the enactment of the 2019 Ordinance, Plaintiffs sought to obtain a payoff of their assessment liens, as they are entitled to do under TEX. LOC. GOV'T CODE § 372.018(f) ("The owner of assessed property may pay at any time all or any part of the assessment . . . on any lot or parcel"). Relatedly, these exhibits

---

[1] Prior to February 2021, Mr. White was Plaintiffs' litigation counsel. *See* Dkt.88a (Order Granting Motion to Withdraw as Attorney).

are offered to show that the City denied Plaintiffs the right to obtain a payoff of their assessment liens in accordance with the PIDA Act. Therefore, these exhibits are relevant to the reliance element of Plaintiffs' negligent misrepresentation claim.

### D. Plaintiffs' Exhibit P-35 Is Relevant and Admissible Because It Is Offered to Show How the City Collected PID Assessments

45.     Plaintiffs' Exhibit P-35 is an email thread between Tracy Waldron, CFO of the City, and Joyce Schanhals, Bastrop County Property Tax Administrator, dated March 6–7, 2019. In it, Ms. Schanhals explains to Ms. Waldron how PID assessment payments are made and how the County Tax Assessor tracked such payments. Therefore, Exhibit P-35 is not offered to assist the Court in interpreting the 2019 Ordinance, but instead, is offered to establish how PID assessment payments were collected prior to the enactment of the 2019 Ordinance. This is relevant to establishing the deprivation of protected property interests Plaintiffs allege under their substantive due process claim claims.

### E. Plaintiffs' Proposed Exhibits Should Not Be Excluded Under Rule 403

46.     Plaintiffs' proposed exhibits should not be excluded under Federal Rule of Evidence 403. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  Without much explanation, Defendants argue that the probative value of the exhibits is outweighed by the danger of confusing the issues and wasting time. *See* Dkt. 106 at ¶ 10.  Because the proposed exhibits are highly relevant to Plaintiffs' claims, they have a high probative value and should not be excluded under Rule 403.

47.     In the context of a bench trial, courts in the Fifth Circuit acknowledge that unique considerations inform Rule 403 objections. In *Gulf States Utilities Co. v. Ecodyne Corp.,* the Fifth

Circuit held that, in the context of a bench trial, "excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure" and "[t]his portion of Rule 403 has no logical application to bench trials." 635 F.2d 517, 519 (5th Cir. 1981). This is because, "in a bench trial, the . . . judge can . . . exclude those improper inferences from his mind in reaching a decision." *Id.*

48.    Here, the probative value of the disputed exhibits is high. As explained above, the Texas Legislature has expressly authorized the use of extrinsic aids when interpreting unambiguous ordinances, and Plaintiffs' proposed exhibits are relevant to elements of their claims. Plaintiffs do not agree that admission of the exhibits will confuse the issues; However, in the context of a bench trial, any risk of confusion is mitigated, as the "judge can . . . exclude those improper inferences from his mind in reaching a decision." *Id.* Further, because the exhibits are relevant to resolving Plaintiffs' claims, there is no danger of wasting time. Therefore, Defendants' Rule 403 objection should be overruled.

### F.  Plaintiffs' Exhibits Are Not Hearsay

49.    Plaintiffs' exhibits are not hearsay under Federal Rule of Evidence 801(d)(2). In relevant part, Federal Rule of Evidence 801(d)(2) provides:

> (d) **Statements That Are Not Hearsay.** A statement that meets the following conditions is not hearsay: . . .
>
> > (2) *An Opposing Party's Statement.* The statement is offered against an opposing party and:
> > . . .
> >
> > (C) was made by a person whom the party authorized to make a statement on that subject;
> >
> > (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]

FED. R. EVID. 801(d)(2)(C)–(D).

50.     Pursuant to Rule 801(d)(2)(D), a majority of Plaintiffs' exhibits fall outside the definition of hearsay. Plaintiffs' Exhibits P-36; P-37; and P-39 are not hearsay because they are admissions made by city officials acting within the scope of their agency or employment while that relationship existed. *See, e.g., Magiera v. City of Dallas*, 389 F. App'x 433, 438–39 (5th Cir. 2010) (holding that statement of city employee was admissible under party opponent exception to hearsay); *Fakhoury v. O'Reilly,* 2019 U.S. Dist. LEXIS 80696, at *41–41 (E.D. Mich. May 14, 2019) (holding that statements made by municipal officials were not hearsay under Federal Rule of Evidence 801(d)(2)(D)).

51.     Similarly, any exhibits that include statements and/or admissions made by George Hyde are not hearsay under Rule 801(d)(2)(D). George Hyde made each of these statements in his capacity as the City's special legal counsel, concerning matters within his relationship with the City (the operation of the PID), and while that relationship existed. *See United States v. D.K.G. Appaloosas, Inc.,* 630 F. Supp. 1540, 1564 (E.D. Tex. 1986) (citing FED. R. EVID. 801(d)(2)(D); *United States v. Santos*, 372 F.2d 177, 180 (2d Cir. 1967)) ("In civil cases . . . where the adversarial process insures trustworthiness, statements by government attorneys are admissible").

52.     The same reasoning applies for any exhibit that includes a statement and/or admission from Misty Ventura or Roxanne Sheehan. Ms. Ventura and Ms. Sheehan made each of their statements in their capacities as legal counsel for Defendant TFHC, concerning matters within their relationship to TFHC, and while that relationship existed. *See, e.g.,* Exhibit P-28 (where Ms. Ventura says: "My scope of work is very narrow and limited to PID matters").

53.     Plaintiffs' Exhibit P-27, the Glass Memo, is not hearsay under Rule 801(d)(2)(C). The Glass Memo contains out of court statements made by the independent accounting firm, Glass & Company. The first page of the Glass Memo shows that George Hyde, acting in his capacity as

special legal counsel for the City, authorized Glass & Company to perform the requested calculations and reconciliation (which are included in the Glass Memo). *See* Exhibit P-27 ("Mr. Hyde, In accordance with your request, we have prepared the attached calculations regarding the amount of reimbursement of capital costs due to the developer . . ."). As such, the Glass Memo "was made by a person whom the [City] authorized to make a statement on that subject" and is not hearsay.[2] FED. R. EVID. 801(d)(2)(C); *United States v. Sanders*, 749 F.2d 195, (5th Cir. 1984) (citing *Reid Brothers Logging Co. v. Ketchikan Pulp Co.,* 699 F.2d 1292, 1306 (9th Cir. 1983) (report prepared by third party at request of defendant company admissible under Rule 801(d)(2)(C)).

54.     Plaintiffs' Exhibits P-33, P-51, P-52, P-53, P-54, and P-75 are not hearsay because they are not offered for their truth. *See Chevron Oronite Co., LLC v. Jacobs Field Servs. N. Am., Inc.,* 951 F.3d 219, 228 (5th Cir. 2020) ("out-of-court statements aren't hearsay if not offered to prove the truth of the matter asserted"). These exhibits are communications (emails and letters) between Plaintiffs' counsel (Robert Reetz and Raymond White), and City employees, officials, or agents regarding Plaintiffs' efforts to obtain a payoff of their assessment liens pursuant to TEX. LOC. GOV'T CODE § 372.018(f). Exhibits P-33, P-51, P-52, P-53, and P-54 are not offered for the truth of the matter asserted, but rather, to show that Plaintiffs sought to obtain a payoff of their assessment liens, but were denied that right by the City.

---

[2] Defendants also argue that the Glass Memo is inadmissible hearsay because it was the product of a formerly consulting-only expert. *See* Dkt. 106 at ¶ 1. This argument confuses the character of the Glass Memo and is without merit. Glass & Company was not retained as a consulting expert in this litigation, as the Glass Memo was issued more than a year before the 2019 Ordinance was enacted and Plaintiffs filed their original complaint. The Glass Memo is highly relevant because it was commissioned by the City to evaluate the amount of reimbursements that TFHC was entitled to under the 2003 Ordinance – an issue that goes to the heart of this case. Moreover, Defendants produced the Glass Memo in response to Plaintiffs' discovery request. *See* TFHC_000603–607. And finally, the Glass Memo cannot be characterized as hearsay because the City expressly authorized Glass & Company to make the Memo, and, as Defendants indicate, the Glass Memo constitutes a business record. *See* Dkt. 106 at ¶ 11 ("the proposed exhibits are authentic and may even constitute business records"); *see also* FED R. EVID. 801(d)(2)(C), 803(6).

55.     Exhibit P-75, an email exchange between Mr. Reetz and Mr. Hyde, is offered to establish Mr. Hyde's stated reasons for not providing a payoff amount to Plaintiffs. *See, e.g., Lockhart v. Republic Servs.,* 2020 U.S. Dist. LEXIS 81344, at *30 (W.D. Tex. 2020) (citing *Nobles v. Cardono, Inc.,* 549 F. App'x 265, 268 (5th Cir. 2013)) (holding that email was not admitted for its truth but to establish the employer's reasons for an employment action).

## IV.     CONCLUSION AND PRAYER

56.     The Court should admit Plaintiffs' proposed exhibits. The Texas Legislature has provided express authority for courts to consider extrinsic evidence when interpreting ordinances, regardless of whether they are ambiguous. *See* TEX. GOV'T CODE §§ 311.023 and 312.005. In addition, a number of Plaintiffs' exhibits are also offered for purposes other than assisting the Court in interpreting the disputed legislation, such as establishing elements of Plaintiffs' claim under art. I, sec. 16 of the Texas Constitution and Plaintiffs' negligent misrepresentation claim. Finally, Plaintiffs exhibits do not fall within the ambit of hearsay, and should not be excluded on that basis.

57.     For these reasons, Plaintiffs respectfully request that the Court overrule Defendants' Objections to Plaintiffs' Trial Exhibits.

Respectfully submitted,


By:  /s/ Richard D. Milvenan
Richard D. Milvenan
Texas Bar No. 14171800
Ian M. Davis
Texas Bar No. 24120793

**McGinnis Lochridge LLP**
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone:  (512) 495-6000
Facsimile:  (512) 505-6331
rmilvenan@mcginnislaw.com
idavis@mcginnislaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2021, the above and foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record as follows:

George E. Hyde
Bradford E. Bullock
Russell Rodriguez Hyde Bullock, LLP
1633 Williams Drive, Bldg. 2, Suite 200
Georgetown, Texas 78628
ghyde@txlocalgovlaw.com
bbullock@txlocalgovlaw.com
(866) 929-1641 – fax

**Counsel for Defendant City of Bastrop and Individual Defendants**

Carl 'Bo' Dawson
Ryan & Dawson
770 South Post Oak Lane, Suite 600
Houston, Texas 77056
cdawson@rdlaw.com
(713) 960-8497 – fax

**Counsel for Defendant Forestar (USA) Real Estate Group, Inc.**

Michael J. Whellan
Jeffrey J. Hobbs
Armbrust & Brown, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas  78701
(512) 435-2300 – telephone
(512) 435-2360 – facsimile
mwhellan@abaustin.com
jhobbs@abaustin.com

**Counsel for Defendant**
**TF Hunters Crossing, L.P.**

_/s/ Richard D. Milvenan_
Richard D. Milvenan

2038915.v1