**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CAROLYN SMITH as TRUSTEE OF THE SMITH FAMILY LIVING TRUST, THE VILLAGE AT HUNTERS CROSSING, L.L.C. and LIRTEX PROPERTIES, LLC** | § | |
| ***Plaintiffs*,** | § | |
| **vs.** | § | **CIVIL ACTION NO. 1:19-cv-1054-RP** |
| **THE CITY OF BASTROP, et al.,** | § | |
| ***Defendants*.** | § | |

**DEFENDANTS' POST-TRIAL BRIEF**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN:

COME NOW, Defendants City of Bastrop, Texas, Connie Schroeder, Willie Lewis "Bill" Peterson, Drusilla Rogers, Lyle Nelson, Bill Ennis, Dock Jackson, Drusilla Rogers, Rick Womble, Michelle Dodson, Lyle Nelson And Tabitha Pucek ("City Defendants"), and TF Hunters Crossing, LP (combined "Defendants"), and file this their Post-Trial Brief, and would respectfully show as follows:

## I. SUMMARY OF THE RELEVANT EVIDENCE[1]

1. The District Court correctly determined that the PID Act "contains no provision prohibiting municipal governments from including interest in an assessment."[2] Therefore, the trial was not about whether the City could consider capitalized interest as a permissible cost component in the 2003 levy (the Court determined that it could), but rather whether the City intended to levy a capital assessment totaling $11.962 million or one only totaling $7.475 million.

---

1 In compliance with the duty of candor to the Court, Defendants' post-trial brief is not in the bullet-point style originally desired. It started out that way, but phrases turned into sentences, which turned into paragraphs.

2 See Doc. #86, p. 11, Doc. #99, p. 3-4.

2. The Court asked the parties to provide "[it] with sufficient information, factual or otherwise, to determine the relevant monetary amount in the 2003 [levy]."[3] After two days of trial, the overwhelming weight of the evidence reflects that the only logical interpretation of the 2003 Ordinance is that the City of Bastrop intended to levy a capital assessment totaling $11.962 million dollars and that the 2019 Ordinance did not alter or adjust the amount of the 2003 levy.[4]

***A. The Amount of the 2003 Levy***

3. The Court asked whether it should reference the 2003 levy "with or without interest" in determining whether the 2019 Ordinance increased the amount of the 2003 levy.[5] The overwhelming weight of the evidence reflects that the City of Bastrop relied upon the professional expertise of Texas licensed civil engineers' estimates of probable cost[6] (2003 SAP - Exhibit F, Tables A-F) as a rational basis for its decision to levy a total capital assessment of $11.962 million ($7.356 million attributable to capital costs for commercial and multi-family development and $4.597 million attributable to capital costs for single-family development).[7]

4. In spite of the Court's earlier ruling, Plaintiffs' repeated contention that the City was prohibited from permissibly considering "capitalized interest" as a cost component in the 2003 levy is both logically and evidentiarily flawed.[8] First, if the Legislature had intended to prohibit cities from considering capitalized interest as a permissible cost in authorized public improvement projects,[9] the PID Act would have included language expressly limiting its use. It does not and the

---

[3] Doc. #99 – Court Order, p. 2

[4] J-003 – 2003 Ordinance, p. 181, J-012 – 2019 Ordinance, p. COB3354.

[5] Doc. #99, p. 3.

[6] J-003, J-004 – 2003 Ordinance and SAP, Exhibit F - Tables A, B, C, D, E, F.

[7] J-004 – 2003 SAP, p. COB003.

[8] The Court rejected this contention in its order partially granting Defendants' motion for summary judgment, which is now the law of the case. See Doc. #86, p. 11, Doc. #99, p. 3-4.

[9] The PID Act sets forth a non-exclusive list of authorized public improvement projects. Tex. Loc. Gov't Code Ann. §372.003(b). Authorized projects include "acquiring, construct, improving, widening,

Legislature did not restrict the meaning of the words "cost" or "acquisition" in the manner Plaintiffs suggest, as both are used repeatedly by the Act (§§372.003(b), 372.015) without express or contextual limitation.[10] The Court's earlier ruling that the PID Act does not prohibit cities from considering capitalized interest as a permissibly recoverable cost in an assessment is correct and should stand.[11]

---

narrowing, closing, or rerouting of sidewalks or of streets, any other roadways, or their rights-of-way" and "acquisition, construction, or improvement of water, wastewater, or drainage facilities or improvements," among other items.

10 *Util. Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 320, 134 S. Ct. 2427, 2441, 189 L. Ed. 2d 372 (2014) (fundamental canon of statutory construction that the words of statute must be read in their context and with a view to their place in overall statutory scheme). *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 467 (Tex. 2009) (canons of statutory construction require courts to treat omissions of language as meaningful and not meaningless).

11 Plaintiffs pointed out during their closing that Defendants could offer no cases that stand for this proposition of state law. While it is true that Texas courts have only rarely interpreted the PID Act, the Texas Attorney General has had greater occasion to do so. While not conclusive determinations of state law, they are persuasive authority. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 650 F. Supp. 1064, 1074 (W.D. Tex. 1986), rev'd on other grounds, 850 F.2d 224 (5th Cir. 1988). A recent AG opinion, while not precisely on point to answer the specific question at issue here – is capitalized interest a permissibly recoverable cost for a public improvement project – does offer insight into how the AG would interpret this issue. See Opinion No. KP-0366. In that opinion, one of the issues was whether bond issuance costs could permissibly be included in an assessment. Because these bonds were issued by an out-of-state issuer, this complicated the analysis, but was central to the AG's finding. *Id*. Noting that Section 372.023(h) permitted the recovery of "all costs incurred in connection with the issuance of bonds," the AG determined that the Legislature intended to allow the recovery of such costs, but only if the bonds were issued by an issuer from within the State and issued "under the provisions of Subtitles A and C, Title 9, Government Code" as set forth in the PID Act. *Id*. Because the issuer was out-of-state and issued bonds that were not in compliance with the relevant Government Code chapters, the AG determined that those bond costs are not recoverable, although they would have been had the issuer been in-state. *Id*.

Here, there is no question that the public improvements in the Hunters Crossing PID (see J-002, Exhibit A) fall within the parameters of permissible projects under §372.003(b) and Plaintiffs have never asserted otherwise. The AG's analysis of permissible bond costs suggests that a similar analysis would be applied to "***acquiring***, constructing [and] improving" roadways and the "***acquisition***, construction, or improvement" of water, wastewater, and drainage facilities. See Tex. Loc. Gov't Code Ann. §372.003(b)(3), (9). Reading the phrase "costs of improvements" in Section 372.023 in conjunction with the non-exclusive list of permissible public improvement projects in Section 372.003 yields but on logical conclusion – the costs of acquiring real property and capital infrastructure material are universally known to commonly include capitalized financing interest. Therefore, it was entirely permissible for the City to consider the engineers' estimates of capitalized interest in determining a reasonable assessment to levy in 2003. If the Legislature had intended to limit "costs of improvements" to exclude capitalized interest as Plaintiffs suggest, it would have said so as it did with bond costs issued by out-of-state bond issuers.

5. Second, the overwhelming weight of the evidence and the actual language of the 2003 Ordinance[12] and 2003 SAP reflect that the City approved a levy of $11.962 million by ***projecting*** it would cost ***$7.365*** million in capital costs attributable to commercial and multi-family development and ***$4.597*** million in capital costs attributable to single-family development (totaling $11.962 million).[13] In justifying a total capital assessment of $11.962 million, all the City must have is any conceivable rational basis to support this legislative act and the great weight of the evidence reflects that the City had it in abundance.[14] The City based the amount of the 2003 capital assessment on multiple schedules of engineers' ***estimates*** of probable cost, which ***estimated*** a construction cost and a capitalized interest cost, but which could vary "based on actual expenditures,"[15] because they were "based on engineers' ***estimates*** [and] ***are approximate and may increase or decrease***."[16]

It is on this factual record that the City ordained a levy of $11.962 million dollars and placed a lien upon the 283-acre tract in 2003 and Plaintiffs' contention that the levy was $7.475 million is not legislative "interpretation," but rather legislative "rewriting."

12 J-003 – 2003 Ordinance, p. 175 – "Section 2 – The City Council finds that the assessments as set forth in the attached Assessment/Service Plan (Exhibit "B") should be made and levied against the respective parcels of property within the PID and against the owners thereof…"

13 J-003 – 2003 Ordinance, p. 175; J-004 – 2003 SAP, p. COB003.

14 *See FM Properties Operating Co.*, 93 F.3d 174–75 (5th Cir. 1996) (actual purpose that may have motivated a legislative act's proponents, (assuming this can be known) is irrelevant for rational basis analysis; question is only whether rational relationship exists between the act and a *conceivable* legitimate governmental objective) (emphasis in original).

15 J-004 – 2003 SAP, p. COB031.

16 J-004 – 2003 SAP, p. COB003.

6. Third, this conclusion is strengthened by the levy's enabling language,[17] which did not differentiate between "hard" capital costs and "soft" capital costs, but simply referred to "capital costs." Again, Plaintiffs' invitation to add language to legislative acts should be rejected.[18] Moreover, the overwhelming weight of the evidence reflects that capital improvements ultimately cost well in excess of the total capital assessment levied,[19] as the 2003 Ordinance stated that they might.[20] Therefore, because ***actual*** capital costs exceeded $11.962 million,[21] the issue of whether the 2003 Ordinance levied a capital assessment with or without regard to $4.485 million in ***estimated*** capitalized interest as a cost is academic.

7. Plaintiffs offered no credible evidence supporting their contention that the amount of the 2003 levy was anything other than $11.962 million dollars. No witness offered any credible opinion to that effect[22] and no admissible, credible documentary evidence suggests otherwise. In fact, other than the 2003 Ordinance itself, possibly the most compelling evidence regarding the amount of the 2003 levy is found in the 2013 Hunters Crossing LGC minutes, which reflect that long before this dispute arose, the amount of the levy was publicly characterized as $11.962 million dollars.[23] Moreover, George Hyde and Misty Ventura, whom the Plaintiffs refer to as the

---

17 J-003 – 2003 Ordinance, p. 175 – "Section 2 – The City Council finds that the assessments as set forth in the attached Assessment/Service Plan (Exhibit "B") should be made and levied against the respective parcels of property within the PID and against the owners thereof…"; J-004 – 2003 SAP, p. COB003 – "Capital costs for commercial and multi-family infrastructure … will total approximately $7.365 million" and "Capital costs for single-family infrastructure … will total approximately $4.597 million."

18 *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330, 126 S. Ct. 961, 968, 163 L. Ed. 2d 812 (2006).

19 J-012 – 2019 Ordinance, p. COB3358-59; J022 – Singleton Report

20 J-004 – 2003 SAP, p. COB003.

21 J-012 – 2019 Ordinance, p. COB3358-59.

22 Plaintiffs' only expert, Chris Anderson, specifically disclaimed the ability to offer any "legal opinions," which would include an opinion on the amount actually levied based on statutory interpretation.

23 J-013 – HCLGC Minutes 9/23/2013.

"architects" of the 2019 Ordinance, both independently testified that though they disagreed on many things during negotiations, the amount of the 2003 levy was never one of them.

***B. Lack of Annual Service Plan Reviews***

8. Though there should now be no doubt about the amount of the 2003 levy, the Court understandably expressed concern during closing arguments about the City's failure to prepare and annually approve an ongoing service plan budget and what, if anything, could be done about it. Tex. Loc. Gov't Code Ann. §372.013. Defendants must point out now that two of the three Plaintiffs actually participated as board members for Defendant HCLGC and would be complicit in any failure to properly handle the SAP review. As Defendants pointed out during the trial, the, the PID Act itself contains no "remedy" for a city's failure to perform this mandatory annual budget review. The PID Act plainly does not provide for waiver or invalidation of a valid levy (or a portion thereof) for failure to conduct an annual service plan budget review. In fact, the PID Act provides that an assessment, once validly levied, along with interest, collection expenses and attorney's fees is a first and prior lien against the property assessed, runs with the land, and remains in effect until paid in full. Tex. Loc. Gov't Code Ann. § 372.018.

9. Setting aside the obvious statute of limitation bar to claims challenging acts beyond the two-year statute of limitations for Plaintiffs' §1983 claim (or even the three-year Municipal Validation Act limitation for any other state-law claims),[24] that still does not answer the Court's question – what is the effect of a city's failure to perform this mandatory budget review and what is the remedy, if any? From a remedial standpoint, the answer must be a ***timely*** application for a writ of mandamus or affirmative injunction against a governmental official in their official

[24] Tex. Loc. Gov't Code Ann. § 51.003.

capacity to comply with state law for ***prospective*** injunctive relief only.[25] Under Texas law, there can be no other remedy because the PID Act contains no express waiver of governmental immunity and does not authorize a "money damage" award (i.e. reduction of a validly levied capital assessment of $11.962 million).

10. From an effect standpoint, because there was no change in the amount of the capital levy, there is no evidence that the City's failure to perform an annual budget review prior to 2017, resulted in any compensable damages to Plaintiffs. And because the only viable remedy under state law is for prospective injunctive relief, logically, the ability to obtain even that relief expires once a budget year has passed because at that point injunctive relief (e.g. an order to perform the budget review and approval) becomes retrospective.[26] Without statutory or common law support, Plaintiffs nonetheless argue that the City's failure to conduct annual service plan budget approvals prior to 2017 invalidates any "cost overruns" if they are not budgeted in the calendar year for which they occurred, but this argument has absolutely no statutory support in the PID Act. While the Act requires mandatory annual service plan reviews that define annual indebtedness and projected costs for improvements, such annual reviews are only "***for the purpose of determining the annual budget for improvements.***"[27]

11. If the Legislature had intended that the failure to prepare an annual budget for improvements meant that PID assessment liens, which are first and prior liens against the property assessed, run with the land, and are effective until paid in full, were automatically extinguished (or reduced by the amount of the "annual budget for improvements" for the year they were incurred),

---

[25] *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019) (governmental immunity does not bar a suit that seeks to bring government officials into compliance with statutory or constitutional provisions, but such a claim must be brought against government officials in their official capacities and may only seek prospective injunctive relief).

[26] *See id*.

[27] Tex. Loc. Gov't Code Ann. § 372.013.

because of a failure to approve an annual improvement budget, it would have said so. But it did not and once again, Plaintiffs' argument is not legislative "interpretation," but rather an attempt to substitute what they want the law to be, rather than following the law that exists. There is simply no plausible interpretation of the PID Act that suggests the Plaintiffs' desired remedy is what the Legislature enacted or intended, and Plaintiffs' argument must be rejected.

### *C. Due Process and the "Increased" Levy and Lack of Budget Review*

12. To satisfy substantive due process requirements, a governmental act cannot be clearly arbitrary and unreasonable, but rather must be rationally related to a legitimate governmental interest (such as the provision of public infrastructure improvements).[28] Under the PID Act, because an assessment cannot be materially more than the special benefits accruing to a property because of such an improvement (§372.015(a)), the City was required to adopt reasonable classifications to apportion costs, such as per square foot, or any other manner resulting in equal shares of the cost on similarly benefitted properties (§372.015(b), (c)). This is exactly what the 2003 Ordinance did in adopting per-square-foot and per-lot classifications based on land use.[29]

13. Rather than increasing the 2003 levy, the 2019 Ordinance applied these respective methodologies to the parcels in the PID based on how they actually developed.[30] No admissible, credible evidence suggests that the apportionment methodology the City adopted was infirm and no admissible, credible evidence suggests that it was improperly applied to Plaintiffs' properties.[31]

---

28 *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (government action comports with substantive due process if action is rationally related to legitimate government interest).

29 J-003 – 2003 Ordinance, Plaintiffs 197-98; J-004 – 2003 SAP, p. COB51-52,

30 J-012 – 2019 Ordinance, p. COB3353-54, 3359.

31 Plaintiffs' expert, Chris Anderson offered testimony that even if the 2003 levy was actually $11.962 million that the 2019 Ordinance increased Plaintiffs' assessments by extending the time to make installments and he testified on a chart reflecting such alleged increases. This is not credible opinion testimony because the 2019 Ordinance expressly limits the total capital assessment to $11.962 million, and

Instead, the great weight of the evidence reflects that the City levied a capital assessment totaling $11.962 million in 2003[32] and that the 2019 Ordinance apportioned it based on actual parcels,[33] which differed from the number and size of estimated parcels reflected in the 2003 SAP master plan.[34]

14. So, while the 2019 Ordinance (and associated 2019 Amended Developer Reimbursement Agreement) did not "increase" the 2003 levy, they did perform several important functions. First, in accordance with the mandatory requirement under the PID Act (§372.015) the 2019 Ordinance apportioned the capital assessment based on the special benefit received by each property based on ***actual*** parcels and ***actual*** development.[35] Second, in accordance with the discretion afforded to it under the PID Act (§372.017), the City extended the amount of time property owners could make annual (interest free) installments to pay each property's apportioned assessment.[36] Had the City not extended the time to make interest-free installments on outstanding assessments, such assessments do not "expire" or get "written off" – property owners would have

---

only apportioned it between properties and extended the amount of time property owners may make installments, interest free. (J-012). Moreover, Plaintiffs never offered a methodology to explain how Anderson arrived at his numbers, which purport to show "increases," other than to explain that one of Anderson's underlying assumptions is that the PID "ended" in 2028 and that any outstanding unpaid assessment would be "written off" as explained in the Kesselus Q&A (Plaintiff Exhibit 39).

The Kesselus Q&A contains obvious misstatements of law because PIDs do not "end" and if Anderson had read the PID Act (he had not) he would have known that PID assessment liens run with the land and are effective until paid and that outstanding unpaid assessments are not written off or erased at the end of an installment term. Unpaid amounts remain due and owing. Tex. Loc. Gov't Code Ann. §372.018. Anderson's failure to read the PID Act, which would explain his erroneous belief that the 2019 Ordinance increased assessments by extending the length of the installment term, explains his reliance on emails between George Hyde and Misty Ventura, for example, and demonstrates the weight that the Court should afford his opinions.

32 J-003 – 2003 Ordinance/SAP, p. 175, 181.

33 J-012 – 2019 Ordinance, p. COB3353.

34 J-004 – 2003 SAP, p. COB030.

35 J-012 – 2019 Ordinance, p. COB3353-54, 3357-59, and Exhibit F to 2019 SAP. The City apportioned the assessment based on square footage for commercial and multi-family and per lot for single-family.

36 J-012 – 2019 Ordinance, p. COB3361-62.

simply had to pay remaining amounts apportioned to their properties in lump sum (or face the prospect of penalties, interest, collection efforts, etc.) (§372.018).

15. Third, because the 2019 Ordinance provided that the total assessment related to the costs of capital improvements could not be increased above the 2003 levy,[37] the 2019 Amended Developer Reimbursement Agreement clarified that the developer (Defendant TF Hunters Crossing) is entitled to a maximum capital reimbursement amount of $11,961,260.[38] Fourth, the Reimbursement Agreement clarified that interest on the principal levy of $11.962 million is waived and cancelled so long as no owner challenges the allocation of PID assessments and outstanding reimbursement amounts owed to the Developer are paid in accordance with the Amended Developer Reimbursement Agreement.[39]

16. Taken together, there is simply no credible evidence that the 2019 Ordinance "increased" the 2003 levy and Plaintiffs' expert's opinion that it did is not credible because that opinion (and associated calculations) are premised on the erroneous belief that the PID would "end" in 2028.[40] Moreover, in cross examination, Plaintiffs' expert admitted that the 25-year period for each property was dependent upon when it was sold to its first ultimate user. This admission further erodes the credibility of his belief that the PID "expires" and is on a fixed 25-year period that ends in 2028. In contrast, Defendants' expert, Patrick Bourne, explained how and why the 2019 Ordinance did not increase the amount of the 2003 levy and he accounted for apparent (though not actual) adjustments to apportionments from 2003 to 2019 because the 2003 "apportionments" were estimated and not based on actual square footage of actual parcels or the

37 J-012 – 2019 Ordinance, p. 3349. See definition of "Annual Installment."

38 J-011 – 2019 Amended Reimbursement Agreement, p. Plaintiffs 309.

39 J-011 – 2019 Amended Reimbursement Agreement, p. Plaintiffs 309.

40 Because there was no "increase" in the levy, Plaintiffs' state "retroactive law" claim is without legal or factual foundation.

actual number of single-family lots that were ultimately built. Thus, because there was no "increase" in the amount of the 2003 levy, Plaintiffs have no cognizable damages protected by the 14th Amendment.

17. This, however, does not end the Court's analysis. Even if there is no state law remedy for the failure to conduct an annual budget review under the PID Act as previously discussed, that does not mean that there is no remedy under the Constitution if the City's failure to perform the budget review violates the 14th Amendment. But even if such a claim were timely under the two-year statute of limitations for §1983 claims in Texas (it is not), the City's failure to conduct annual service plan reviews for the purpose of adopting budgets for improvements prior to 2017[41] is only proof of its failure to follow state law, assuming that its delegation of this function to the Hunters Crossing LGC was not authorized by the PID Act. Assuming without conceding that the PID Act does not authorize the City to delegate the annual budget approval function to the Hunters Crossing LGC, such a violation of state law, standing alone,[42] is insufficient to state a constitutional claim under the Fourteenth Amendment.[43]

---

41 Though the City itself did not formally consider and approve annual budgets prior to 2017, it had delegated that function to the Hunters Crossing LGC (see J-020, 021), which did consider and approve annual budgets for the PID in duly noticed open meetings from 2013 to 2016 (See J-013, 014, 015, 016, 017, 018, 019). Defendants have previously briefed the Court in their Motion for Summary Judgment (Doc. #71) on why the City could believe that such a delegation was proper under the PID Act at the time. However, even if the Court concludes that the City's interpretation of the PID Act's authority to delegate certain functions to another body was an incorrect interpretation of Texas law, the City's incorrect interpretation of state law is insufficient to establish a constitutional claim under the 14th Amendment because it improperly bootstraps state law into the Constitution. *FM Properties Operating Co*., 93 F.3d at 174.

42 The reason this issue "stands alone" is because the amount of the 2003 levy was not increased or altered because of the capital cost overruns. Compare J-003 with J-012 and J-022.

43 *Id*.

18. Finally, insofar as procedural due process is concerned, Plaintiffs all had actual or constructive notice of the existence of the Hunters Crossing PID and their respective apportioned assessments. The 2003 Ordinance was filed in the County (J-005), Lirtex and the Village at Hunters Crossing had notice of its existence in their deeds (J-025, J-026, J-027). And while Smith testified that she was not informed of the PID's existence at closing when she purchased her home, even though the 2003 Ordinance had been filed in the County deed records (J-005) and the levy was existing at the time she purchased her property, the City had no control over the disclosures provided to her at closing and her lack of subjective awareness of the PID, even if true, in no way invalidates a validly levied PID assessment. Moreover, Smith and Carlos Liriano (Lirtex representative) were ultimately members of the Hunters Crossing Local Government Corporation and had actual notice of the capital assessment years before they filed a lawsuit against the City. Additionally, when the City adopted the 2019 Ordinance, it held a town hall meeting, and two public hearings where members of the public offered input (Ex. D-7). Notice and an opportunity to be heard prior to the adoption of the 2019 Ordinance were abundant.

## II. CONCLUSION

19. The 2003 Ordinance levied a capital assessment totaling $11.962 million. The 2019 Ordinance apportioned that lump-sum assessment on the basis of special benefits received by each actual parcel. The 2019 Ordinance did not increase the 2003 levy. The City's failure to conduct annual budget reviews prior to 2017 does not and cannot invalidate the 2003 levy. Each Plaintiffs' capital assessment was validly apportioned, runs with the land, and a lien remains on the property until that assessment is fully paid. The Plaintiffs have not met their burden on any asserted claim.

Respectfully submitted,
**RUSSELL RODRIGUEZ HYDE BULLOCK, LLP**
1633 Williams Drive, Bldg. 2, Suite 200
Georgetown, Texas 78628
512-930-1317 (ph)
866-929-1641 (fax)
ghyde@txlocalgovlaw.com
bbullock@txlocalgovlaw.com

By: */s/ Bradford E. Bullock*
GEORGE E. HYDE
State Bar No. 45006157
BRADFORD E. BULLOCK
State Bar No. 00793423

**ATTORNEYS FOR THE CITY OF BASTROP, TEXAS; CONNIE SCHROEDER; WILLE LEWIS "BILL" PETERSON; DRUSILLA ROGERS; LYLE NELSON; BILL ENNIS; DOCK JACKSON; TREY JOB; RICK WOMBLE; MICHELLE DODSON; AND TABITHA PUCEK**

*By:/s/ Jeffrey J. Hobbs with permission*
Michael J. Whellan
Jeffrey J. Hobbs
State Bar No. 24012837
Armbrust & Brown, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas 78701
mwhellan@abaustin.com
jhobbs@abaustin.com
Tel: (512) 435-2300
Fax: (512) 435-2360

**ATTORNEYS FOR DEFENDANT TF HUNTERS CROSSING, L.P.**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy the foregoing pleading was served according to the Federal Rules of Civil Procedure on all parties of record in the manner specified below on the 4th day of June 2021, as follows:

Richard D. Milvenan
McGinnis Lochridge LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
rmilvenan@mcginnislaw.com
Tel: (512) 495-6005
Fax: (512) 505-6305

***Via e-filing and e-mail***

**ATTORNEYS FOR PLAINTIFF**

Carl 'Bo' Dawson
Ryan & Dawson
770 South Post Oak Lane, Suite 600
Houston, Texas 77056
cdawson@rdlaw.com
Tel: (713) 960- 1555
Fax: (713) 960-8497

***Via e-filing and e-mail***

**ATTORNEY FOR DEFENDANT FORESTAR (USA) REAL ESTATE GROUP, INC.**